IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT JANUARY TERM, 1849.

---

### BERRIAN v. THE STATE.

1. It is correct, in the caption of an indictment, to style the Court of Oyer and Terminer "The Court of Oyer and Terminer and General Jail Delivery in and for the county of M.," without saying "of the state of New Jersey."

2. It is not necessary, in the caption of an indictment, to state that the grand jury were summoned, or by what authority they were summoned.

3. It is not error to join issue by adding the *similiter* in the name of *the state*, instead of in the name of the attorney general; and *semble*, any error in adding the *similiter*, or by not adding it at all, is amendable.

4. The justice of the Supreme Court and judges of the Common Pleas, who hold the Oyer and Terminer, are properly styled "*the judges* of the Court of Oyer and Terminer and General Jail Delivery."

5. When it appears by the record that a trial was held in a certain term, but on a day subsequent to the first day of the term, it is not error that the record does not show how the cause was *continued* from the first day of the term to the day of the trial.

6. It is error in an indictment to express numbers or dates by Arabic figures or Roman numerals; they must be written in *words at length*, except when the indictment, as in forgery, professes to set forth the exact tenor or a *fac-simile* of any instrument.

---

This cause was removed into this court, from the Middlesex Oyer and Terminer, by writ of error. The record sent up with the writ of error is as follows:

VOL. II.                    A                    9

STATE OF NEW JERSEY, Middlesex county, *to wit:*—Be it remembered, that at a session of the Court of Oyer and Terminer and General Jail Delivery, holden at New Brunswick, in and for the said county of Middlesex, on Tuesday the seventeenth day of November, in the year of our Lord one thousand eight hundred and forty-six, (it being the third Tuesday of November in the year aforesaid) before the Honorable James S. Nevius, associate justice of the Supreme Court of Judicature of the state of New Jersey, and P. P. R., M. B., and D. F. R., esq'rs, and others, their fellows, judges of the Inferior Court of Common Pleas in and for the said county of Middlesex, constituted a Court of Oyer and Terminer and General Jail Delivery in and for the said county, according to the form of the statute in that case made and provided, by the oath of James C. Zabriskie, &c., good and lawful men of the county of Middlesex, being then and there empannelled, sworn, and charged diligently to inquire in behalf of the state of New Jersey, and for the body of the county of Middlesex, it is presented in the manner and form following, *to wit:*

MIDDLESEX COUNTY, *ss.*—The grand inquest for the state of New Jersey, and for the body of the county of Middlesex, upon their oath present, that John B. Berrian, late of the township of North Brunswick, in the said county of Middlesex, wickedly and maliciously contriving and intending unjustly to aggrieve one John N. Johnson, and him, the said John N. Johnson, to subject to the punishment, pains, and penalties by the laws of this state provided for the persons guilty of felony and larceny, on the third day of August, in the year of our Lord eighteen hundred and forty-six, at the township aforesaid, in the county aforesaid, came in his proper person before Peter P. Mesuroll, esq., then and yet being one of the justices of the peace in and for the said county of Middlesex, and then and there, before the said Peter P. Mesuroll, esq., in due form of law, was sworn and took his corporal oath upon the holy gospel of God, he, the said Peter P. Mesuroll, then and there having a lawful and competent authority and power to administer the said oath to the said John B. Berrian in that behalf; and that the said John B. Berrian, being so sworn as aforesaid,

Berrian v. The State.

not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, then and there, upon his oath aforesaid, before the said Peter P. Mesuroll, esq., (the said Peter P. Mesuroll then and there having a lawful and competent power and authority to administer the said oath to the said John B. Berrian, in that behalf as aforesaid,) falsely, wickedly, wilfully, and corruptly did say, depose, swear, and make affidavit in writing, among other things, in substance and to the effect following, that is to say:

STATE OF NEW JERSEY, Middlesex county, ss.—Be it remembered, that on this *3d day of August*, 1846, John B. Berrian (the said John B. Berrian meaning), of the township of South Brunswick, in the county of Middlesex, in his proper person, comes before me, Peter P. Mesuroll (the said Peter P. Mesuroll, esq., meaning), one of the justices of the peace in and for said county (the said county of Middlesex meaning), and upon his oath maketh complaint, that on the third day of August, A. D. 1846, (the said third day of August, in the year of our Lord eighteen hundred and forty-six meaning) he, this deponent (the said John B. Berrian meaning), had one fanning mill stolen from his barn (the barn of the said John B. Berrian meaning), at the Sand Hills, of the value of ten dollars, and that the said fanning mill had been taken, stolen and carried away from out of the barn of him, the said John B. Berrian; and that he, the said John B. Berrian, had just and reasonable cause to suspect, and did suspect, that the said fanning mill was then concealed in the barn or carriage house of the said John N. Johnson, in the township of South Brunswick, as by the same affidavit, now filed with the said Peter P. Mesuroll, esq., justice of the peace as aforesaid, more fully appears; whereas, in truth and in fact, the said John B. Berrian had not, on the said third day of August, in the year eighteen hundred and forty-six, nor on any other day, had a fanning mill or any other mill stolen from his barn or from any other place; and whereas, in truth and in fact, the said John B. Berrian had not, on the said third day of August, nor at any other time, any reason to suspect, and did not suspect, that the said fanning mill, nor any other mill of him, the said John B. Berrian,

or of any other person, was concealed in either the barn or carriage house of the said John N. Johnson ; and so the grand inquest aforesaid, upon their oath aforesaid, do say, that the said John B. Berrian, on the said third day of August, in the year eighteen hundred and forty-six, aforesaid, at the township of North Brunswick aforesaid, before the said Peter P. Mesuroll, esq., (he, the said Peter P. Mesuroll, esq., then and there having such power and authority as aforesaid,) by his own act and consent, and of his most wicked and corrupt mind, in manner and form aforesaid, falsely, wickedly, wilfully, and corruptly did commit wilful and corrupt perjury, to the great displeasure of Almighty God, to the evil example of all others in the like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same. And afterwards, *to wit*, at a session of the said Court of Oyer and Terminer and General Jail Delivery of the said state, and of the county of Middlesex aforesaid, holden at New Brunswick, in and for the said county of Middlesex, on the fourth Tuesday of February, it being the twenty-third day of February, in the year of our Lord one thousand eight hundred and forty-seven, before the said James S. Nevius, associate justice of the Supreme Court of Judicature of the said state, and the said Peter P. Runyon, Matthew Brown, and David Fitz Randolph, esq'rs, and others, judges of the Inferior Court of Common Pleas for the county of Middlesex, constituted a Court of Oyer and Terminer and General Jail Delivery in and for said county, according to the form of the statute in that case made and provided, cometh the said John B. Berrian, in his own proper person ; and having heard the said indictment read, and forthwith being demanded of and concerning the premises in the said indictment above specified and charged upon him, how he will acquit himself thereof, he saith he is not guilty thereof, and concerning thereof he puts himself upon the country.

And the state of New Jersey, by John C. Elmendorf, esq., who prosecutes for the state, doth the like. Therefore let a jury come before the judges of our said Court of Oyer and Terminer and General Jail Delivery, at the next session thereof, to be

holden at New Brunswick aforesaid, in the county aforesaid, on the second Tuesday of June next, by whom the truth of the matter may be the better known, and who have no affinity to the said John B. Berrian, to recognize, upon their oath, if the said John B. Berrian be guilty of the premises aforesaid or not, because, as well the said John C. Elmendorf, esq., who prosecutes for the state in this behalf, as the said John B. Berrian, have put themselves upon the said jury; and the same day is given, as well to the said John C. Elmendorf, esq., who prosecutes for the state in this behalf, as to the said John B. Berrian.   At which said next session of Oyer and Terminer and General Jail Delivery of the said state of New Jersey, of the county of Middlesex aforesaid, *to wit,* at New Brunswick aforesaid, in the county aforesaid, on Tuesday, the fifteenth day of June, in the year of our Lord eighteen hundred and forty-seven, in the term of June, in the year aforesaid, before the Honorable Ira C. Whitehead, associate justice of the Supreme Court of Judicature of the state of New Jersey, and Peter P. Runyon, Matthew Brown, and David F. Randolph, esq'rs, and others their fellows, judges of the Inferior Court of Common Pleas in and for the said county of Middlesex, constituted a Court of Oyer and Terminer and General Jail Delivery in and for the said county of Middlesex, according to the form of the statute in that case made and provided, here cometh, as well the said John C. Elmendorf, esq., who prosecutes for the state in this behalf, and the said John B. Berrian, in his own proper person, and the jurors of that jury, by James C. Stout, esq., sheriff of the said county of Middlesex, to this matter empannelled and returned, *to wit,* Isaac Manning, &c., being called, came; who being chosen, tried, and sworn to speak the truth of and concerning the premises in the indictment above specified, do say, upon their oath, that the said John B. Berrian is guilty of the premises in the said indictment on him above charged, in manner and form as in and by the indictment aforesaid is within alleged against him.

Whereupon all and singular the premises being seen, and by the said court here fully understood, it is considered, by the court here, that the said John B. Berrian be convicted of the

offence in the said indictment charged ; and it is further adjudged, by the court here, that the said John B. Berrian, for his offence aforesaid, do pay a fine of eight hundred dollars to the state of New Jersey, and the fees of prosecution, and the said John B. Berrian, here in court, is committed to the sheriff of the said county of Middlesex, safely to be kept until the fine aforesaid and the costs of prosecution are paid, or until he be discharged by due course of law.

IRA C. WHITEHEAD.

And thereupon the following errors were assigned :

1. That it does not appear, from the record and proceedings aforesaid, that the indictment in the record contained was presented by any lawful grand jury, thereto lawfully summoned, empannelled, sworn, and charged to inquire, &c.

2. That it does appear that, by the law of the land, no offence against the said law is set forth and charged in the said indictment, as having been committed by the said John B. Berrian.

3. That it was adjudged by the said court that the said John B. Berrian, for his supposed offence aforesaid, should pay a fine of eight hundred dollars to the state of New Jersey and the fees of prosecution.

4. That the said John B. Berrian was thereupon, by the judgment of the said court, immediately committed to the custody of the sheriff of the county of Middlesex, until the fine aforesaid and the costs of prosecution should be paid.

5. That the indictment, and the matters therein contained, are not sufficient to warrant the judgment, or to convict him of the supposed perjury.

6. That the judgment and sentence are irregular, unlawful, and contrary to the statute.

7. That issue was joined on the said indictment between the state and John B. Berrian on the fourth Tuesday of February, in the year of our Lord one thousand eight hundred and forty-seven ; and thereupon it was immediately awarded by the said court, that a jury should come before said court on the second Tuesday of June, then next. And that the trial of the said issue was not had on the said second Tuesday of June

aforesaid ; but that the said trial of the aforesaid issue was had on the third Tuesday of June, in the year aforesaid, and without any continuance unto that day, whereby and by means whereof a discontinuance was effected.

8. That the indictment does not contain, set forth, or charge any offence, whereof, by the laws of this state, the said Court of Oyer and Terminer and General Jail Delivery had cognizance, or which they had any right, jurisdiction, power, or authority to hear and determine.

To this, on part of the state, was filed the general joinder.

This cause was argued at October Term, 1849, before the CHIEF JUSTICE, and NEVIUS and CARPENTER, Justices, by *J. Warren Scott*, for the plaintiff in error, and by the *Attorney General* and *Elmendorf*, for the state.

*J. W. Scott*, for plaintiff in error.

I. The first error to which I call the attention of the court, is a defect in the source of accusation. I mean this to apply, as well to the tribunal who received the accusation, as to that supposed body, or voluntary assemblage of men, who presented it. There can be no doubt, among lawyers or judges, of this fundamental proposition, *viz: that the record of a judgment of conviction of crime must show in distinct terms that a proper and lawful indictment was presented, by a lawful grand jury, to a competent and lawful court, at a lawful time and place.*

The record must support itself; no extrinsic aid is to be allowed. It is of such high and supereminent authority, that it imports also absolute verity. Nothing shall be supplied ; nothing shall be intended, other than is set forth ; nothing shall contradict it. It is to be proved only by its sacred self.

These are aphorisms in the law familiar to every scholar, cherished by every judge. I make use of no reasoning to prove them ; I cite no authority in their support ; that would be superfluous.

1. To what court, then, was the indictment against Berrian presented ? Let the record answer : " at a session of the Court of Oyer and Terminer and General Jail Delivery, holden at

New Brunswick, in and for the county of Middlesex, on,"
&c., " it is presented," &c. What court is that? Has the county
of Middlesex a Court of Oyer and Terminer? This is not so.
The state of New Jersey has, indeed, a Court of Oyer and
Terminer, &c., which is held in the county of Middlesex, and
in every other county in the state, at appointed times. This
cannot be understood as the session of the Oyer and Terminer
of the state of New Jersey, for *the record does not say so.*

This exception has often been adjudged fatal, even on mo-
tion to quash, at times when motions to quash were much more
discouraged than, they are at present. More decidedly is the
exception fatal on demurrer, motion in arrest, or upon writ of
error. 1 *Lev.* 175 ; 1 *Vent.* 39, 242, 422 ; 1 *Shaw's J., Tit., In-
dictment ;* 1 *Nelson's J.,* same title.

In England, the public courts of record are the king's courts.
The peace is the king's peace, &c., and therefore the entry is
"at the sessions of the peace of our sovereign lord the king,"
"at the session of Oyer and Terminer of our sovereign lord
the king." In other words, these courts are the courts of sove-
reignty. In 'New Jersey the substance is the same; the style
is varied to express the truth. It is commanded, in express
words, in the constitution of the state, that all indictments shall
conclude "against the peace of this state, the government and
dignity of the same." Hence it is manifest that they should be
presented at a court of the state, and not of a county merely.

2. It does not appear, from the record, that there was a lawful
grand jury.

No man, says the constitution of New Jersey, shall be held
to answer, unless upon the presentment or indictment of a
grand jury. *Art.* 1, § 9. The grand jury shall be summoned
and empannelled by the sheriff of the county, says the statute.
*Rev. Stat.* 220, 221, 966.

The record of conviction must contain all things necessary
and essential; nothing can be intended either *in aid* or *im-
peachment* of it; it imports absolute verity. The record under
examination does not show that the sheriff summoned the
grand jury, or that they were summoned at all, *non constat* but
that they were a voluntary grand jury.

It is no answer to this objection to say, that, in many instances, records are made up in this way in the English courts. It is to be remembered that the courts of Oyer and Terminer of that country are held by virtue of a commission, which is recited in every judgment roll. That commission contains the authority, in express terms, to " inquire by the oath of good and lawful men *and otherwise.*" The obedience to this mandate appears upon the record. In England there is no constitutional principle, that no man shall be held to answer, except upon indictment by a grand jury. They have *no statute* that the sheriff shall summon and empannel the grand jury.

II. This record is defective and erroneous, in the following particulars :

1. The issue, if there be an issue, is improperly joined. The replication is in these words : " and the state, by J. C. E., esquire, who prosecutes for the state, doth the like."

Sovereignty does not plead, sovereignty does not accuse : it tries, it condemns, it executes, it pardons, but it never pleads. Sovereignty does not say that any man is guilty until after his trial and conviction by a jury, or until he has acknowledged his guilt.

2. The award of *venire* upon the record is, that the jury shall come, for the trial of *the said issue,* before the *judges* of the said court.

The Court of Oyer and Terminer, &c., is composed of the justices of the Supreme Court and the judges of the Court of Common Pleas of the proper county, or any three or more of them, of whom one of the justices of the Supreme Court shall always be one. And the statute further enacts, that the justices of the Supreme Court and the judges of the courts of Common Pleas, *by virtue of that act, and without further commission,* shall constitute the courts of Oyer and Terminer and General Jail Delivery in and for, &c. Thus, by the statute, the two courts of Oyer and Terminer and General Jail Delivery were made one. These courts were not newly created ; they had existed time out of mind. They were coeval with the first settlement of the country. No new name was given to them by the statute. The award of *venire* is to the judges

aforesaid. The judges aforesaid, without the justice aforesaid, had no jurisdiction.

3. The award of *venire* is to the next session or term of the same court, as it is called. This is absurd. The Court of Oyer and Terminer is not a court of sessions or terms. It can have but one session, from its very nature. There may be a next or following *court*, but there cannot be a next *session* of the same court. It most certainly was so when the court was held by commission. The statute now stands in place of that commission, and nothing more. That an error in the award of *venire* is proper ground of reversal, appears abundantly from *Cro. Car.* 164, *Adams & Hicks ;* same book, 261, *Ellis & Johnson.* So in *Arundel's case,* 6 *Co.* 14 ; 2 *Co.* 102 ; 2 *Keb.* 387 ; 3 *Keb.* 624.

4. It does not appear from the record that the indictment was tried at a court held for the county of Middlesex. The record is entirely silent *for* what county the court was held. For this very cause the judgment was reversed in *Rex* v. *Wilkes,* 4 *Burr.* 2563–4–5, &c.

5. The record shows that the cause was continued from the fourth Tuesday of February to the second Tuesday of June ; and it appears from the record that the trial took place on the fifteenth day of June, which must have necessarily been later than the second Tuesday, and that there was no intervening continuance of the cause to that time.

6. It appears from the record that the indictment was presented at the Court of Oyer and Terminer of November, 1846 ; that the defendant, John B. Berrian, afterwards, at a session of the same court in February, 1847, being required to plead to the said indictment, pleaded the general issue ; and that the said indictment was tried at the Court of Oyer and Terminer next following, on the fifteenth day of June then next following, and that there is no *placita* of any of the three courts. Nor does it appear how, or in what manner, the said indictment came into the hands, jurisdiction, or power of the second and third courts above named.

III. A part of this indictment is in Arabic figures, and there is no innuendo to explain their meaning. In olden times, plead-

ings, court rolls, and all proceedings in courts of law where engrossed in Norman French. The statute 36 *Edw.* 3, required all pleadings and law proceedings to be entered and enrolled in Latin. The statutes 4 *Geo.* 2, c. 26, and 6 *Geo.* 2, c. 14, directed that they should be in English. Our statute is a condensation of these two acts of parliament, and it is done by a master's hand. It enacts that all proceedings whatsoever, in every court of law in this state, shall be written in words at length in the English language, *and in no other tongue or language*, and not abbreviated, except by such abbreviations as are commonly used in the English language; *provided nevertheless*, that it shall be lawful to express numbers by figures in like manner as hath heretofore, or is now commonly used in the said courts respectively.

During the time in which the statute 36 *Edw.* 3, was in force, a period of nearly three hundred and seventy years, there is not one case to be found justifying the use of Arabic figures in law proceedings. All the old reports repudiate them in most decisive terms. I do not find either authority or *dictum* allowing their use. Nor can I find any such authority, or even *dictum*, from Westminster Hall since the statutes of *Geo.* 2; on the contrary, numerous decisions condemn them in peremptory terms.

All the elementary writers, modern as well as ancient, concur in laying it down as a principle, that indictments must be written out in words at length; that no abbreviations are admissible; that figures cannot be allowed in indictments, but that all numbers must be expressed in words at length. To this general rule there is an exception, and that exception embraces two cases: first the case of forgery, and the second the case of threatening letters. In these two cases a *fac-simile* of the instrument may be given. And they assign a reason for it. I refer the court to 2 *Hale* 170; *Andrews* 146; *Burns' J., Tit. Indictment; Ryland C. C. C.* 51; *Cro. Ch.* 33; *Hawk. P. C. B.* 2, c. 25, § 129; 1 *Ch. C. L.* 176, and many more.

In New Jersey it never was the use or custom to express numbers by figures in indictments. The courts of our state never did adopt a custom or practice so slovenly or insecure.

Our earliest reports condemn the use of figures in law proceedings, even in civil cases. " No common usage or custom has sanctioned the use of figures in this state ; no such custom has ever obtained. From the earliest times to the present it would have been *error*," says C. J. Kirkpatrick, in the case of *Cole & Petty*, 1 *Penn.* 60. In the case of *The State* v. *Burroughs*, 2 *Halst.* 426, C. J. Kinsey makes use of similar language. He expressed his disapprobation in pointed terms, censured the pleader for his negligence, and quashed the indictment.

The indictment under review professes to set forth the substance and effect of the oath. It says that Berrian swore *among other things,* to the substance and effect following. The oath set forth is therefore not a copy, nor can it be immaterial, for it is charged to be the substance and effect. It is a contradiction in terms to say that the substance is immaterial.

IV. There is no perjury or other crime punishable by law charged in the indictment of which the Oyer and Terminer of Middlesex had jurisdiction. The oath in which it is supposed that the perjury was committed, was taken in the township of North Brunswick, in the county of Middlesex, before P. P. Mesuroll, one of the justices of the peace of Middlesex. The substance and effect of it is set forth in the indictment.

Perjury is defined to be the wilful false swearing, where a lawful oath is administered in some judicial proceeding, and in a matter material to the issue or point in question. 1 *Hawk. B.* 1, *c.* 69, § 6 ; 3 *Inst.* 163–4–5–6 ; 4 *Bac. Abr. Tit. Perjury ; Rex* v. *Aylett,* 1 *D. & E.* 69 ; 7 *D. & E.* 315 ; 4 *Bl. Com.* 137.

In 1 *D. & E.*, above quoted, Lord Mansfield takes occasion to say : I take the circumstances necessary to be, the oath must be taken in a judicial proceeding ; it must be taken before a competent authority ; it must be material to the question depending.

Let us for a moment examine the oath by these tests. We are not favored with a *fac-simile* or a copy ; we have the substance and effect of it, in the shape of a certificate from the justice. It purports to be the act of Mesuroll. It is not signed by Berrian, nor does it appear that he ever saw it. Was it a lawful oath ? Had Mesuroll any authority to administer that

oath? Taken in its most enlarged sense, and without subjecting it to rigid criticism, it is either the substance of a complaint on oath, or it is the substance and effect of evidence upon a complaint there depending; but no mortal can tell which it is. It cannot possibly mean more than to complain, or to give evidence, that a larceny had been committed at the Sand Hills; but by whom committed, is not charged, stated, or even hinted. Who were participant in the offence, or privy to it, is not suggested. It is the mere naked fact, that a larceny had been committed at the Sand Hills. This is its utmost extent.

Had, then, Mr. Justice Mesuroll any jurisdiction of that larceny? Had he any right or authority to inquire of that crime? Mr. Justice Mesuroll is a justice of the peace of the county of Middlesex. His jurisdiction is local, it is confined to his proper county. Does it extend to the Sand Hills? Where are they? Are they in Middlesex? in Monmouth? in Burlington? or even in the state of New Jersey? Mr. Justice Mesuroll had no more authority to administer that oath, from all that appears in this indictment, than the constable or the town clerk.

An act done before a local officer, exceeding his jurisdiction, either territorial or in respect to the subject matter, is *coram non judice*, and altogether void. 2 *Lilley P. Reg.* 291. Perjury cannot be committed, unless the court before whom the oath was taken have entire jurisdiction. *Yelv.* 111, *Paine's case*. This case was decided on conference of all the judges. To the same effect, 3 *Inst.* 166; 3 *Leon* 170; 1 *John.* 498; 2 *Nels. J.*, *Tit. "Indictment."* These all concur in the same result. In 3 *Wheeler's Crim. Cas.* 180, the same point is again decided.

It cannot be intended, in the absence of all charge to that effect, that the Sand Hills are in Middlesex, or in New Jersey. *Burr.* 1127; 1 *South.* 51

Criminal tribunals have a jurisdiction strictly local. It is *strictissimi juris*, says Sir Edward Coke. The locality must appear upon the record, responds the very learned and venerable Foster. Local jurisdiction shall not be intended nor inferred. 3 *Dall.* 382. It must appear upon the record, or it is error. 1 *H. Blac.* 136.

There was a decision of the Supreme Court of this state involving the very question.

In June, 1804, J. S. went before the grand jury of Middlesex, and swore that R. B. stole his umbrella, at Vernon's tavern. The grand jury disbelieved him, and of their own motion indicted him for perjury in that oath. He was tried at the September General Jail Delivery of the same year, convicted, and sent to the state prison.

A writ of error was brought. This very error was assigned, *to wit*, that J. N., the foreman of the grand jury, had no lawful right to administer that oath ; that the right and duty of the grand jury were alike local, and that they were confined to the county of M.; and that it was not charged in the indictment that Vernon's tavern was in the county of Middlesex. The cause was elaborately argued ; and for that cause the judgment was reversed.

The attorney general removed the record into the Court of Errors, by writ of error. It was again argued with great labor and attention ; and the judgment of the Supreme Court, reversing the conviction in Middlesex General Jail Delivery, was *una voce* affirmed, and the record remitted. J. S. was, by *habeas corpus*, brought to the bar of the Supreme Court, and discharged.

V. A part, and a very important part, of the definition of the crime of perjury is, that the matter sworn to shall be material to the question depending.

The question arises, what was the question depending ? The indictment charges that Berrian, " wickedly and maliciously intending to subject John N. Johnson to the pains, penalties, and punishment by law provided against persons guilty of felony and larceny," made the oath.

Was there any complaint against Johnson for larceny ? Did Berrian complain of Johnson in any shape ? Every word that is here set down as being sworn to by Berrian, may have been true consistently with the entire innocence of Johnson. Does it charge Johnson with the larceny ? No ! Does it charge that Johnson knew anything about the larceny ? No ! Does it charge that Johnson concealed the stolen article ? No ! Does it charge

that Johnson knew of the concealment? No! not a word like it! *In the absence, then, of all averment,* that the matter sworn to was material; in the absence of all finding by the jury of that important and all operative fact, can this court, upon a writ of error, adjudge the materiality?

There is no rule or principle in criminal pleading more familiar to our minds, none more peremptory, none more consonant with sound reasoning, than this, that the materiality must be apparent and certain, not probable or guessed. *Comb.* 461; *Cro. Eliz.* 428; *Com. Rep.* 43; 2 *Ld. Raym.* 889; 5 *D. & E.* 318; *Rex* v. *Dunstan, R. & M.* 109; 1 *Stark.* 416, and many more.

VI. The judgment, as it is entered on this record, is erroneous in several respects, in form as well as substance. It consists of three parts:

1. *It is considered* that J. B. B. be convicted, &c.

2. *It is adjudged* that he, for his offence, do pay to the state of New Jersey a fine of eight hundred dollars and the fees of prosecution.

3. He is here committed to the custody of the sheriff until, &c. It is *ideo consideratum est* with regard to a thing utterly senseless and unmeaning; but with respect to the punishment, it is *judicatum est.* On this subject the law is very sensitive. The judgment is not to be the judgment of the court, it is to be the judgment of the law; it is to be a consequence flowing out of the antecedent premises. *Law of Errors* 90; *Lex. Int.* 141; 3 *Bl. Com.* 4.

4. The defendant was not allowed to move in arrest. Judgment ought not to be in cases of high crime without a demand. "*Si quid dicere habeat, quare judicium non,*" &c. 4 *Mod.* 407; 4 *Com. Dig.* 407; 3 *Mod.* 265; *R. Sho.* 132.

5. There is no *quod capiatur.* Many judgments have been reversed for this cause, and for improperly substituting it for the *misericordia et e converso.* All good pleading and entry require it. *Marquis of Winchester's case, Cro. Car.* 505. Upon every indictment the judgment is, and ought to be, *quod capiatur,* and for this omission the judgment was reversed.

6. The defendant, J. B. B., is adjudged to pay to the state of New Jersey a fine of eight hundred dollars.

In the act for the punishment of crimes, we read that a person convicted of perjury may be sentenced to pay a fine of $800; but we do not find in that act, nor any other, that that fine shall be paid to the state of New Jersey. On the contrary, we read, in that very statute, that all fines imposed by the Oyer and Terminer, with a single exception, are to be paid to the proper county, and for their own use, and not to the state, for its use. *Rev. Stat.* 454, 261, 262, 301.

By the old law of New Jersey, fines were paid to the state; and then it was right to enter the judgment in that manner. There was an exception even then. A conviction for fornication then was, and still is, punished by a fine of fourteen dollars, to be paid to the overseers of the poor of the township. The judgments in such cases always were, and still are, entered and made up according to the truth of the matter, and to the plain command of the statute.

So in England, when the fine by law is appropriated to any use or person, the record of the judgment, which is absolute verity, and tells the whole truth, and nothing but the truth, designates to whom that fine shall be paid, or to what purpose it shall be applied. 3 *B. & P.* 354, *Cumberland* v. *The King, in error.* So also 4 *Ch. C. L.* 376.

VII. The judgment in this record, whether merited or not merited, is not the judgment which the statute prescribes in cases of conviction of perjury.

This is not an indictment at common law, but is altogether under the statute. The judgment in perjury is precisely pointed out by the statute. *Rev. Stat.* 262.

It is an essential part of the judgment, on conviction of perjury, that the convict *be thereafter incapable of giving testimony in any of the courts of this state, until such time as the judgment so given against the offender shall be reversed.*

The incapacity is to be a part of the judgment; it is not to be a derivative incapacity, it is to be direct, immediate, and indestructible, until the judgment be reversed. *Rev. Stat.* 262.

The language of our statute is very explicit: " If any person

shall commit wilful and corrupt perjury on his or her oath or affirmation, &c., such person so offending, and being thereof convicted, shall be punished by fine, not exceeding $800, or by imprisonment at hard labor, not exceeding seven years, or both, at the discretion of the court, and be thereafter rendered incapable of giving testimony in any of the courts of this state, until such time as the judgment so given against the said offender shall be reversed."

It is plain, from this reading, that the statute requires that the infamy and incapacity to give testimony shall be a part of the judgment; and such construction of it is necessary and properly required. The first English statute having direct bearing upon this subject, and to which it is important to refer, is 5 *Eliz. c.* 9.

The sixth section enacts, that if any person shall commit any manner of wilful perjury, and be thereof convicted or attainted, he shall, for his said offence, forfeit twenty pounds, and have imprisonment by the space of six months, without bail or mainprise-; and the oath of such person from thenceforth not to be received in any court of record within this realm of England or Wales, or the marches of the same, until such time as the judgment given against the said person shall be reversed, by attaint or otherwise.

Section seven provides, that if the offender shall not have goods and chattels to the value of twenty pounds, then he shall be set on the pillory of some market-place, and there have both his ears nailed, and from thenceforth be discredited and disabled for ever to be sworn in any of the courts of record aforesaid, until such time as the judgment given against him be reversed.

Many prosecutions took place under this statute. It was well considered by able judges and skilful pleaders. The result of their examination, so far as it respects the judgment roll, we have in the entries of Sir Edward Coke. *Co. Ent.* 368–9. After adjudging the forfeiture and the six months imprisonment, it adds: " Et si R. P. non habeat bona seu catalla ad valentiam viginti librorum, tunc idem R. P. imponatur super pilloriam apud Chelmsford predictam in cometatu predicto in loco mercatorum ibidem, et ibidem habeat ambas aures suas, cum clausu

fixas, et quod predictus R. P. imposterum non sit receptus ut testis ad deponendum vel jurandum in aliqua curia de recordo intra dominia regni Angliæ vel Walliæ seu merchias eundem, quousque judicium predictum reversatum fuerit per attendum vel aliter, juxta formam statuti et quod capiatur," &c.

The statute 2 *Geo.* 2, adds the power of transportation; and the statute 18 *Geo.* 2, extends the penalties of both statutes to perjuries at elections. On these statutes, the judgment is *inter-alia*, that your oath be not henceforth received in any court of record of England or Wales, or the marches thereof, until this judgment be reversed. So are all the precedents; I have not found one exception. *Co. Ent.* 368; *Rast.* 86; 4 *Ch.* 369.

That it is required to be so, and that it ought always to be so, is asserted by Holt, C. J., 2 *Salk.* 514. He says, "it is part of the judgment to be disabled." So in same book, 690, he says, "It is not a consequence, but part of the judgment, *viz:* Quod imposterum non sit receptus ut testis; and he cites *Co. Ent.* 368, above quoted.

In 6 *East.* 327, Price, the defendant, was found guilty of perjury at an election. Judgment was passed against him, without incorporating within it the judgment of disability. During the same term the court discovered their error, set aside the erroneous judgment, and rendered a new one, according to this important provision of the statute.

No correct reader or judge can fail to perceive the exact conformity of our act of Assembly to the statute of *Elizabeth*, on the subject of the incapacity. The fine, imprisonment, and incapacity are in the same section in both alike, and both are subject to the same construction.

We have seen that Lord C. J. Holt, in the two cases cited from *Salkeld*, in express words, rules that the incapacity to testify, was and ought to be a part of the judgment; and the reason that he assigns for it, is because it is part of the punishment prescribed. I might cite many more cases, but it is surely unnecessary; no authority can be higher than Sir Edward Coke, Sir John Holt, and Lord Ellenborough, and they are entirely uncontradicted. A strong line of distinction is very apparent between that incapacity which is part of the punishment, and

that which is merely derivative. In the latter case pardon restores the competency; in the former it does not. Perpetual infamy is adjudged; and it is indelible, except by that power which reverses the entire judgment.

If it be admitted, as I think it must, that the incapacity in cases of conviction of perjury under the statute ought to be a part of the judgment, it seems to be the work of supererogation to prove that its omission is error.

In 2 *Salk.* 632, *Rex* v. *Walcott,* a writ of error was brought to reverse a judgment of high treason. The judgment was " Quod interiora extra ventrem trahentur," but these words, " *in conspectu ejus et ipso vivente comburentur,"* were omitted. Upon solemn argument the whole court, *una voce,* reversed the judgment, for want of the words *ipso vivente et in ejus conspectu.* In *Gilbert's Cases* 48, this is cited by the very learned and able chief baron with high approbation. The chief baron is himself high authority. In *Lilly's Ent.* 241, judgment was reversed on a writ of error by the heir, for want of the same words in a judgment against his ancestor. The current of decisions in Westminster has been uniform.

If the principles and the settled law of entry required such decisions in that forum, we are compelled to say, that the same principles and the same law command the same decisions in the courts of New Jersey. Surely the great rights of personal security ought not to be less vigilantly guarded in such a republic as we have, than in the monarchy which governs the British isles. It follows, then, that the judgment against Berrian is faulty in this respect.

But it may be urged, that Berrian has no right to assign this matter for error. We may be told that it is laid down in our books, as a general rule, that no man has a right, or shall be allowed to reverse a judgment for error, unless he can show, also, that the error complained of is to his injury. This is the objection in its full strength.

This general rule, as it is called, is to be understood with many exceptions :

1. It never was the rule in criminal pleadings. It never, in any one case, has been adjudged to extend to criminal law :

numerous decisions evince the contrary. *Rex* v. *Walcott*, above quoted, is decisive of this. So in *Beecher's case*, 8 *Co.* 115 ; 4 *Mod.* 162 ; *Ins. Leg.* 341 ; *Doc. Plac.* 423, and very many others.

2. In civil cases, also, where the error is the default of the court, it may be assigned, if it appear upon the record. 2 *Saund.* 258. The error of the court may always be assigned. *Cro. Car.* 211, *Beecher* v. *Shirley.* "There is no judgment the plaintiff to be *in misericordia*, and the plaintiff himself, in whose advantage it was omitted, may assign it for error." And the judgment was reversed. The same principle is asserted and maintained 2 *Cranch.* 126.

The result is, that Berrian has an indisputable right to assign for error the omission of the judgment of incapacity ; and if the statute is to be obeyed, the judgment of the Oyer and Terminer of Middlesex must continue to remain reversed, as by the judgment of the Supreme Court it now is reversed, and Berrian must be restored.

GREEN, C. J. The writ of error in this cause removes into this court, from the Court of Oyer and Terminer and General Jail Delivery of the county of Middlesex, the record of conviction of the plaintiff in error upon an indictment for perjury. The importance of the cause, and the learning and research which characterized the argument, demands at the hands of the court a careful examination of the numerous objections assigned for error, and discussed upon the argument. In performing this duty, I shall consider the several objections, in the order in which they were presented upon the argument by the counsel for the defendant.

The first error assigned is, that it does not appear by the record that the indictment was presented by any grand jury, thereto lawfully summoned, empannelled, sworn, and charged, &c.

And it is first insisted, that the court before whom the jury is empannelled is not a tribunal known to the law. The jury were empannelled at a session of "the Court of Oyer and Terminer and General Jail Delivery," holden at New Brunswick, in and for the said county of Middlesex.

It is contended that the Oyer and Terminer is a state, not a

county court, and that it should have been styled " The Court of Oyer and Terminer and General Jail Delivery of the state of New Jersey."

It is a sufficient answer to this objection to say, that the designation given to the court in the record, is the precise designation given to it by law. *Rev. Stat.* 220.

It is moreover, in very terms, the designation given to the court in all the approved precedents to be found in our reports. 2 *South.* 539, 746 ; 4 *Halst.* 357 ; 6 *Halst.* 204.

It is further objected, that it does not appear that the grand jury were *summoned,* nor by what authority they were summoned. The record sets forth that the presentment was made by A. B., &c., good and lawful men of the county of M., " being then and there empannelled, sworn, and charged diligently to inquire." This language is in strict conformity with the most approved precedents. 4 *Bl. Com., Appendix,* § 1.

It will be found to be more formal in its language than captions usually are. It is not usual to set forth that the jurors were summoned, nor by *whom,* nor even that they were *empannelled.* The formality of the present record is sanctioned in this state, not only by precedent, but by express adjudication. *State* v. *Jones,* 4 *Halst.* 371 ; *Nicholls* v. *State,* 2 *South.* 539 ; *State* v. *Gustin,* 2 *South.* 746.

It is worthy of notice that in the case of *Nicholls* v. *State* the objection was raised, that the indictment was not presented by a grand jury summoned by the sheriff by lawful authority. The objection was not founded upon a defect of the caption, nor upon any inference against the validity of the summons derived from the record, but upon a special return made by the court below, in obedience to a rule of this court, that " no writ, precept, or other process was issued or given to the said sheriff, commanding or authorizing him to summon or empannel any grand jury at said term ; and that no such writ or process was returned by the sheriff, nor is any now on file there."

2. It is objected that the issue is not properly joined. The objection is to the form of the *similiter,* which is in these words : " and the state of New Jersey, by J. C. E., esq., who prosecutes for the state, doth the like.'

In substance, the issue is between the state and the party arraigned ; in form the *similiter*, in our practice, is usually in the name of the prosecuting attorney.   In England, it is in the name of the clerk of the peace, the clerk of arraigns, the attorney general, or other officer who prosecutes for the crown, and is either in the proper name of the officer or in his name of office. 2 *Hawk.* 399, *B.* 2, *c.* 38 ; 2 *Hale's P. C.* 258 ; 3 *Cro.* 315; *Arch. Cr. Pl.* 48, 49 ; 4 *Blac. Com., Appendix,* § 1.

In point of fact the *similiter* is not added ; it only appears when the record is made up.   At common law, when the prisoner hath pleaded not guilty, the clerk of the assize or clerk of the arraigns, on behalf of the crown, replies that the prisoner is guilty, and that he is ready to prove him so.   'This is done by two monosyllables, " *cul prit.*"   By this replication the king and the prisoner are at issue.   4 *Blac. Com.* 339.

In capital cases, the issue is altogether immaterial.   A mistake, therefore, in the joinder of issue will not be material, and even the total omission of the *similiter* will not be sufficient to vitiate the proceedings.   4 *Burr.* 2085 ; 1 *Leach's Cr. Law* 276 ; 1 *Chit. Crim. Law* 481.

And in cases of misdemeanor, where the issue should be made up, if the *similiter* is omitted, the court will order it to be interlined.   In *Harris' case* (2 *Cro.* 502), upon an indictment for nuisance the record was removed, after conviction, into the King's Bench by *certiorari :* on examination of the record, it appeared that no issue was joined, and so the verdict was without issue.   The court, upon motion, ordered it to be amended, by the insertion of the *similiter ;* for it was but matter of course, and by intendment was omitted in the entry by default of the clerk.

3. It is objected that the award of the *venire* is, that the jury should come before the *judges* of the said court.   It is insisted that it should have been before the *justice and the judges* of the said court.   The Court of Oyer and Terminer is composed of justices of the Supreme Court and the judges of the Court of Common Pleas, or any three or more of them, of whom one of the justices of the Supreme Court shall always be one.   I am not aware of any technical or legal designation

of their office, as members of the Court of Oyer and Terminer. They are neither styled by the statute justices nor judges of the Court of Oyer and Terminer; though it appears, from the phraseology of the fifteenth section of the act, that the term judges, as there used, was understood to include as well the justices of the Supreme Court as the judges of the Common Pleas. The justices of the Supreme Court are frequently, in the statute book, styled judges. By the phrase, ".the judges of the Oyer and Terminer," therefore, as well in common parlance as in legal acceptation, are included all the judges composing the court, and essential to its organization. It includes as well the justice or justices of the Supreme Court as the judges of the Common Pleas.

4. It is objected that the cause was continued from the fourth Tuesday of February to the second Tuesday of June, then next; and by the record it appears that the trial took place on the fifteenth of June (which of necessity must have been later than the second Tuesday), without any intervening continuance. It appears, however, affirmatively by the record, that the cause was continued from the February Term of the court, until the *next* session thereof, to be holden on the second Tuesday of June: and further, that the cause was tried at the said next session of the said court, though not upon the first day of the term. There is no necessity of a continuance from day to day in the same term, the whole term being in contemplation of law but one day.

5. It is objected that a part of the indictment is in figures, and not in words at length. By an inspection of. the record, it appears that the day of the month and the year, in which the affidavit upon which the perjury is assigned, is therein recited to have been taken, and the day of the month and year upon which, in that affidavit, the larceny is charged to have been committed are in figures.

It is laid down by Sir Matthew Hale, that figures to express numbers are not allowable in indictments, though sometimes literal numbers be allowable in returns; but in indictments, the numbers, whether cardinal or ordinal, must be expressed in Latin. 1 *Hale's P. C.* 170.

The modern elementary writers state the rule to be, that no part of the indictment must be in figures, and therefore numbers and dates must be expressed in words at length. The only exception to this rule is where a *fac-simile* of a written instrument is to be set out, as in the case of forgery, in which case it must be set out in the indictment in words and figures, as in the original itself. *Arch. Cr. Pl.* 25 ; 1 *Chitty's Cr. Law* 176 ; 2 *Burns' Just.* 500, *"Indictment" VII.*

By the statute 13 *Edw.* 3, c. 15 (1390), it is enacted, " That all pleas which shall be pleaded in any courts whatever shall be entered and enrolled in Latin. This statute was in force when Hale wrote his treatise, and continued in operation down to the fourth year of *Geo.* 2, (1731). 3 *Bl. Com.* 322.

The earliest case touching the use of figures in legal proceedings, which I find reported while this statute remained in force, was a civil suit in the 13 *Car.* 2. The action was assumpsit. Upon writ of error, after verdict, it was assigned for error, that the year (1642), in which the promise was alleged in the declaration, was in figures. Jones, J., was of opinion that, being in an inferior court, it was helped by the statute of *jeofails.* But the court said, the time is necessary, and ought to be in Latin, according to the statute, and being in figures is *insensible.* And judgment was reversed. *Bushel* v. *Bland,* 1 *Keb.* 19, *pl.* 55. The same case is reported as *Ducket* v. *Bland,* 1 *Sid.* 40, *pl.* 6 ; 13 *Vin. Abr.* 210, *"Figures."*

In the 22 *Car.* 2, it was moved, in the King's Bench, to quash an indictment, because the year in the caption was in figures ; but the objection was avoided by the year of the reign being also stated : Hale, C. J., said *that* was enough. 1 *Mod.* 78, *pl.* 40. In *Hobson* v. *Heywood,* 23 *Car.* 2, *Style* 88, the plaintiff in error, in an action of debt for rent, assigned for error, that the sum demanded for rent was in figures, and not in words. The court held that the error was material, and reversed the judgment.

In *Hawkins* v. *Mills,* 26 *Car.* 2, in an action of debt, the error assigned was, that, in the award of the *venire facias,* the sheriff was commanded to summon " XII men," the number twelve being in *Roman letters.* The objection was not al-

lowed, being in text as used in King's Bench, and not in figures, but if it had been 12 *in figures* it would have been error. 2 *Levinz* 102; 3 *Keb.* 301, *S. C.; Anonymous,* 1 *Vent.* 256; 13 *Viner* 210, *" Figures "* 4.

It is worthy of notice that this error was assigned upon the defect of the record touching the number of jurors, in regard to which there could have been no mistake, the number being fixed by law, and in the modern practice being entirely omitted in the award of the, *venire.* 3 *Blac. Com., Appendix,* § 4; 2 *Lilly's Ent.* 350, 397.

In *Hebbert* v. *Corsthrop,* 5 *W. & M., (Skinner* 409), in assumpsit for work and labor, the exception was, that the sum in the writ of inquiry was in figures. *Sed non allocatur,* for they were (XII) Latin figures, which is well enough : otherwise if they had been (12), English figures.

In *Rex* v. *Phillips,* 1 *Stran.* 261 (6 *Geo.* 1), a coroner's inquisition was quashed because the year in the caption was in common figures, whereas it ought to have been in words at length, or at least in Roman numerals.

If the caption of an indictment set forth the style of the day or year in any figures but Roman, it is insufficient. *Hawk. P. C., B.* 2, *c.* 125, § 129; 2 *Keb.* 128, *pl.* 83; *Bac. Abr., Title " Indictment " I.*

In the *Law of Errors (Ed.* 1703) there is an assignment of error in a civil suit, because in the record the sums are written in figures, when they ought to have been written at large.

In 1 *Instructor Clericales (Ed.* 1714), 14, it is said, " T'is reckoned more clerklike to write all sums and figures till past five at length, but after five in numeral figures ; " but this is meant as to precedents, tests of writs, and such things as are not of record, for *there all sums ought to be at length in words.*

The authorities which have been cited are all drawn from the period when the statute of Edward remained in force. That statute, it will be recollected, simply required the proceedings of courts to be entered and recorded in Latin ; and it has been suggested, as a ground for the distinction between the Roman numerals and the Arabic figures, that the former are Latin, which the latter are not. It will be recollected,

however, that during this period legal proceedings were all entered in court-hand, with numerous abbreviations, quite as unintelligible to the uninitiated as the Roman numerals themselves.

The statute 4 *Geo.* 2, *c.* 26, enacts, that from and after the 25th of March, 1733, all writs, pleadings, records, and proceedings in courts of justice shall be in the English tongue, and shall be written in a common legible hand and character, and not in court-hand and in words at length, and not abbreviated.

The statute 6 *Geo.* 2, *c.* 14, enacts that all writs, pleadings, records, and proceedings in courts of justice may be written or printed in a common legible hand and character, and with the like way of writing or printing, and with the like manner of expressing numbers by figures, as have been heretofore, or are now commonly used in the said courts respectively, and with such abbreviations as are now commonly used in the English language. 6 *Statutes at Large* 65, 120.

In the *King* v. *Haddock* (11 *Geo.* 2), the indictment was for a nuisance, by putting and placing on the soil of the river Thames, on the first day of August, 1732, 200 loads of brick. To this indictment there was a demurrer on several grounds, one of which was, that the year when the offence was committed, and also the quantities of brick, were expressed in figures. Lee, C. J., said, there was great weight in the objection, and relied especially upon the authority of Lord Hale, that figures ought not to be used in indictments.

Page, J., said, that in civil actions figures are now good, because literal ones were therein used before the late acts; but that *in indictments* they ought not to be inserted, because it was not usual before these acts, therein to express numbers in figures.

Chapple, J., said, the objection is a very strong one, and the cases are express for the purpose. It is very difficult to maintain, upon the late acts, that figures may be used in indictments, it not being usual to use them in such cases before.

Probyn, J., said, no other figures but such as are capital were ever used in the bodies of indictments, and these were never allowed but only in immaterial parts; but in this case a

very material part is expressed in figures : now these are not aided by the English acts, because they leave the matter as it was before.

The court took time to advise, and no final opinion was ever given, there being a new indictment brought by the prosecutor. *Andrews* 137 ; 2 *Sessions Cas.* 315, *S. C.*

Upon a careful examination of the English cases, except the language of Probyn, in *King* v. *Haddock,* I find no adjudication, nor even a *dictum,* either before or after the statute of *Geo.* 2, which countenances the idea that figures, either Roman or Arabic, may be used in an *indictment.* The more recent elementary writers (as we have seen) adopt the doctrine of Lord Hale, and lay down the rule explicitly, that figures cannot be used in an indictment, except when the *fac-simile* of a written instrument is to be set out.

The courts at Westminster, indeed, have carried the principle of requiring the proceedings in courts of law to be in words at length, so far as to hold it a fatal objection to *civil process* that the year in the *notice to appear* was in figures, and not in words at length. *Pinero* v. *Hudson,* 1 *M. & S.* 119 ; *Sutherland* v. *Tubbs,* 1 *Chitty* 319, *note a ; Grojan* v. *Lee,* 5 *Taunt.* 651 ; *Williams* v. *Jay,* 5 *Taunt.* 652, *note.*

It was, however, subsequently resolved that such notice was good, though the year were in figures. *Eyre* v. *Walsh,* 6 *Taunt.* 333.

Process had previously been held good even when the year was erroneously stated, or altogether omitted in the notice. 1 *Taunt.* 424 ; 2 *Stran.* 1232 ; *Barnes* 425.

I have been led to this review of the authorities, from the fact that, in two or three recent American cases, it has been held that Arabic characters will not vitiate an indictment. *State* v. *Raiford,* 7 *Porter* 101 ; *State* v. *Hodgeden,* 3 *Verm.* 481 ; *Peck* 165, cited in 2 *Hale's P. C. (Ed.* 1817) 170, *note* 2 ; 2 *Bouvier's Law Dict., " Figures."* In the *State* v. *Raiford,* the court said, that it was more proper to write the day, year, &c., than to insert Arabic characters ; but that the contrary practice has prevailed so long that it would be unwise to disturb it. The decision of the court is based upon established

practice.   Such, doubtless, is the practice of the state where that decision was made, but I have been unable to ascertain the existence of any such practice in the courts at Westminster ; and in this state both practice and authority are the other way.

Our statute respecting amendments and jeofails adopts the material provisions of the statute of *Geo.* 2, in respect to civil suits, but provides that no part of the act except that which directs proceedings to be in English, shall extend to indictments or criminal proceedings.   *Rev. Stat.* 991, § 17, 19.

In *Cole* v. *Petty*, 1 *Penn.* 61, Kirkpatrick, C. J., said, it is certain that in courts of record we do not enter judgments in figures.   No such custom has ever obtained from the earliest times to the present : it would have been error.   And, indeed, as the sum for which judgment is entered, is the very essence of the whole, it would seem to be absurd that all the rest of the proceedings should, of necessity, be entered in words written at length, and that this only should be entered in figures.

Judgments, even in the courts for the trial of small causes, cannot be entered in figures.   *Penn. Rep.* 61, 86, 110, 413.

In *Ross* v. *Ward*, 1 *Harr.* 23, Hornblower, C. J., manifested a strong disposition to extend the principle even to the process of the justices' courts.   He said, " The process of a court requiring the personal appearance of a party, ought to be in words at length, especially as to the time he is requested to appear, and the sum demanded of him."

These opinions exhibit clearly the view which our courts have taken against the principle and practice of using figures in civil proceedings.

In criminal proceedings, and especially in indictments, the objection to the use of figures is more obvious and cogent, and we believe they are universally (except where a *fac-simile* is necessary) written in words at length.   To this cause, and to the general judgment of the profession, that the use of figures is fatal in an indictment, may be attributed the entire absence of all judicial authority directly upon the point.

Indeed, upon the argument, it seemed to be conceded that ordinarily the use of figures in an indictment is fatal, but it was insisted that the present case is not within the principle.

It remains to be seen whether the use of figures in the indictment now under consideration can be justified.

It is said, in vindication of the present indictment, that perjury is assigned upon a written affidavit, and that that part of the indictment where the figures occur, is but a transcript of the affidavit upon which the perjury is assigned. When perjury is assigned upon a written instrument, the pleader may doubtless set out the tenor of the affidavit by words and figures in the indictment. But how does it appear that that was done in the present instance?

It does not purport, upon the face of the indictment, to be a copy. It is averred to be set out not in words and figures, or according to its tenor, but according to its substance and effect. This averment cannot be rejected as surplusage. And *the matter sworn to*, as stated in the indictment, is most manifestly not a literal copy of the affidavit, but a mere statement of its substance and effect. It cannot, therefore, be justified upon the ground that it is a *fac-simile* of a written instrument. The indictment charges that the defendant did say, depose, swear, and make affidavit in writing, among other things, in substance and to the effect following, that is to say:

"State of New Jersey, Middlesex county, *ss.*—Be it remembered, that on the 3d day of August, 1846, John B. Berrian (the said John B. Berrian meaning), of the township of South Brunswick, in the county of Middlesex, in his proper person, comes before me, Peter P. Mesuroll (the said Peter P. Mesuroll, esq., meaning), one of the justices of the peace in and for said county (the said county of Middlesex meaning), and upon his oath maketh complaint, that," &c.

Now it is very manifest that all this is no part of the matter sworn to by the defendant. It is but the mere title of the affidavit, a statement of the name and residence of the deponent, the name and office of the magistrate, and of the time of taking the oath. Though composing technically a part of the written affidavit, it is no part of the matter upon which the perjury is assigned. It might all have been very properly and very advantageously omitted by the pleader. But having been incorporated in the indictment, as a part of *the descrip-*

*tion of the offence,* it becomes material, and must be supported by proof.

Nor is the objection obviated by the fact, that, in a previous part of the indictment, the day upon which the affidavit was taken is stated in words at length. The precise day upon which the crime is charged to have been committed, is not material ; and had the title of the affidavit been entirely omitted, the indictment would have been supported by the production of the affidavit, though it had borne date upon another day. But as the indictment is now drawn, if the affidavit had borne date upon any other day than the third of September, it would have been inadmissible in evidence, and solely on the ground of the misdescription of the affidavit. It cannot, therefore, be rejected as surplusage. Upon this point, I am of opinion that the judgment below must be reversed.

This conclusion renders it unnecessary that any opinion should be expressed upon the other errors assigned.

CARPENTER, Justice, concurred.

NEVIUS, J. I concur in the opinion expressed by the Chief Justice on all the errors assigned, except that which relates to the use of figures in the indictment; and whilst I assent to the principle maintained by him on this point, I cannot agree with him in its application in this case.

By the seventeenth section of the act respecting amendments and jeofails, passed in 1794, all proceedings in every court of law and equity in this state are " required to be in the English tongue and language, and in no other tongue or language, and written or printed in good legible hand, and not abbreviated, except such abbreviations as are commonly used in the English language ; *provided,* that it shall be lawful to express numbers by figures, in like manner as it hath been heretofore, and is now commonly used in said courts."

This provision, by the nineteenth section of the same act, is expressly extended to indictments. The first inquiry then is, were figures commonly used to express numbers and dates in indictments before and at the time of the passing of this statute? Before the revolution, and the adoption of our con-

stitution in 1776, the practice was to express dates and numbers in words at length, and not in figures, and this practice seems confirmed by numerous judicial decisions, whether by regulation of the common law, or by usage or custom, or statutory provision, is not essential now to determine.  In *Hale's Pleas of the Crown*, 2 *vol.*, 170, it is asserted, " that figures to express numbers are not allowable in indictments ;" and in a case reported by *Andrews*, page 146, the same doctrine is held, and on which the court cite *Styles* 88, 1 *Sid.* 40, and 1 *Keb.* 19 ;  and this doctrine is held both by *Chitty* and *Archbold*, in their elaborate and valuable works on criminal law, with the qualification, however, that figures in an immaterial part of an indictment will not vitiate it, and that they may be used where a copy of an instrument is attempted to be set forth.  This was the law and practice in New Jersey when the constitution was adopted, which declared that so much of the common and statute law of England as had been in use here should remain in force ; and it continued in force till the passing of the act above mentioned.  The statute, therefore, made no change, and it was so held in *Cole* v. *Petty*, 1 *Penn.* 60, and in other cases after that time.  In some of the states this rule has been relaxed without the aid of a statute. In *State* v. *Hodgeden*, *Ver. Rep.* 431, the court say, that figures are a part of the English language, and are admissible in indictments; and this is approved by the court in *Kelsy and Little* v. *State of Mississippi*, 5 *Smede's and Marshall's Rep.* 518.  In a late case in Connecticut, *Rawson* v. *State*, reported in the *Law Reporter*, *vol.* 1, *No.* 3, it is said, that the use of figures there is conformable to common practice, and is sufficiently precise and certain ; and the chief justice in that case remarks, that in England, where most felonies were punished with death, the strictness of their practice in this respect was *in favorem vitæ*, whilst in prosecutions for misdemeanors here it would be in *favorem criminis*.  A like decision may be found in 7 *Porter's Rep.* 101.

Whatever force there may be in the reasons assigned for the decisions in the cases above cited, and in the states where they were first made, and under the circumstances under which

they were rendered, I am unwilling to change the practice made by judicial decision. The old rule has been well known and understood by public prosecutors in this state, and has been uniformly practiced; and I deem it safest and best to adhere to it, with the exceptions above named, until the legislature, in their profound wisdom, shall see fit to alter it. It has been very often decided by this court, that judgments of inferior courts entered in figures are erroneous and in violation of the act, and for that cause have been reversed; and it would be grossly inconsistent to require a less particularity in criminal prosecutions. I think the rule a safe one, and am unwilling to depart from it.

But it still remains to inquire, whether the rule contended for is applicable to this case, or whether the case is within the exceptions above mentioned.

The indictment charges that the defendant, wickedly, &c., contriving and unjustly intending to aggrieve one J. N. J., &c., on the third day of August, in the year of our Lord one thousand eight hundred and forty-six, came before one M., then and yet being one of the justices, &c., then and there, and before the said justice, was sworn and took his corporate oath, &c., and then and there falsely, &c., did say, depose, swear, and make affidavit in writing, among other things, in substance and to the effect following, that is to say: "State of New Jersey, Middlesex county, ss.—Be it remembered, that on the 3d day of August, 1846, the said J. B. B. (the said J. B. B. meaning), of, &c., in his proper person comes before me, M. (the said M. meaning), one of the justices, &c., in and for the said county (the said county of M. meaning), and upon his oath maketh complaint, that on the 3d day of August, A. D. 1846, (the said third day of August, in the year of our Lord eighteen hundred and forty-six meaning,) he, this deponent (the said J. B. B. meaning) had one fanning mill stolen from his barn (the barn of the said J. B. B. meaning), at, &c., of the value, &c., and that the said fanning mill had been taken, stolen, and carried away from out the barn of him, the said J. B. B.; and that he, the said J. B. B., had just cause to suspect, and did suspect, that the said mill was then concealed in

the barn of the said J. N. J., as by the said affidavit, now filed, &c., more fully appears."

This is as much of the indictment as is necessary to recite, in order to exhibit fairly the objection urged. The objection is, that in the caption, or introductory part of the affidavit, which shows where and when, and by what authority it was taken; the day of the month and the year is expressed in figures. I think two answers may be given to this objection: 1st. That these figures are used in an immaterial part of the indictment; and, 2d, that the pleader manifestly intended to insert a copy of the affidavit in the bill.

As to the first of these answers, if, as is intended, the pleader meant to set forth only the substance of the affidavit, that part of it usually termed the caption is immaterial and unimportant, and may be rejected as surplusage. The time when the defendant went before the magistrate and made the affidavit, had already been set forth in words at length, and the time when the mill is alleged to have been stolen is also, by innuendo, expressed in words at length. The offence, therefore, is sufficiently charged without any reference to this caption at all, and if upon the trial there was found a variance in the date of the justice's memorandum, I apprehend it would not have been fatal. Time here is not the essence of the offence, and if untruly stated in any part of the indictment, it will not vitiate it. If the affidavit set forth in the indictment be the same upon which the perjury is assigned, it matters not whether the time when it was taken be truly stated in the caption or not; nor does it matter whether, in reciting the substance and effect of the caption, a different time should be mentioned from that which is expressed in such caption.

But the other answer, I think, is equally conclusive, that this affidavit and caption was intended to be set forth literally as written down by the magistrate, although the pleader professes to set it out in substance and effect only. If the affidavit is recited in its very words, *ex vi termini*, it must be in its very substance and effect. We have a right to judge, from the language of the indictment, whether the affidavit is literally or only substantially set forth, or intended to be set forth.

The language here is in the present tense, and precisely adapted to a recital in the very words: "Be it remembered, that on this 3d day of August, 1846, comes the said J. B. B., and upon his oath makes complaint." Now although there are words in the subsequent part of the affidavit in the past tense, as "that he had a mill stolen," "that it had been stolen out of his barn," "that he had reason to suspect, and did suspect," it by no means appears that this is not the precise language in which the justice wrote the affidavit. And after trial, where this written paper must have been produced, and, for aught that appears, without exception, I think it will be going too far to say that it is not literally set forth in the indictment; and if so, then it is substantially set forth, and the use of figures does not vitiate the indictment. I cannot, for this cause, concur in the reversal of this judgment.

Judgment reversed. (a)

(a) This judgment of the Supreme Court was affirmed in the Court of Errors at the term of July, 1850.

AFFIRMED, 2 Zab. 679.

CITED in Dodge v. State, 4 Zab. 464; Donnelly v. State, 2 Dutch. 471; State v. Jay, 5 Vr. 370.

