## The State *vs.* Chester Hodgeden,

<span style="float:right">Orange, *March,* 1831.</span>

An indictment is not defective merely by its being written with the usual initials and
numerical figures for dates, as A. D. 1830, when the same are plainly legible.

This was an *indictment* for *theft,* upon which the respondent
was arraigned, and tried, and convicted, in the county court.   Af-
ter verdict, the respondent filed the following motion in arrest,

ORANGE,
*March*,
1831.

State
*vs.*
Hodgeden.

which was overruled, and sentence passed upon him; by virtue of which he was sent to the state prison.

The respondent filed exceptions to this decision, and the proceedings were brought up to this Court.

"And now the said *Hodgeden*, after verdict, and before judgement and sentence, comes and moves the court here, that all further procedings in said case be arrested, and no judgement be rendered therein; and for causes of arrest, sets down the following :—That the said indictment is insufficient in law, for this, that the times and dates therein mentioned are set forth in Arabick or numerical figures, and not written out at full length in the English language, with Roman characters."

Early in this term, a *quære* was suggested to the Court, by the attorney for the government, whether this court would issue a *habeas corpus* to the keeper of the state prison, commanding him to bring the respondent before the court, or whether they would proceed to a hearing in his absence. The court, learning that the respondent's counsel had no wish for the trouble and expense of a *habeas corpus*, if the Court considered it regular to proceed, and hear the arguments while the prisoner was in custody, but not in court, admitted the hearing to proceed without sending for the prisoner.

*The respondent's counsel proceeded in argument.*—1st. In support of this motion, the statute of Vermont is cited, (*chapter 7th, sec. 50th*,) which enacts, "that all writs, processes, declarations, indictments, pleas, and answers and entries, in the several courts of justice within this state, shall be in the English language, except technical terms." In this indictment, "*in the year of our Lord,*" is expressed by *A. D.*, the initial letters of *Anno Domini*, two Latin words, signifying, "*in the year of our Lord.*"

2d. All "*abbreviations in indictments are prohibited.*" They must be written out in words at length.—4 *Bla. Com.* 306, *note; Hale P. C.* 170, *note; Chit. C. L.* 145 ; 2 *Sw. Dig.* 374. In this indictment, it will be seen, that, "in the year of our Lord," is abbreviated to *A. D.* The objection here may arise, that this provision is by statute of England, and, therefore, not binding here. To this it may be answered, that is not a remedial statute, remedying some defect in the common law; but is a declaratory statute, merely explaining and declaring what the common law is, and always has been.

3d. It is expressly stated in the above authorities that "no fig-

"ures can be allowed in indictments, but all numbers must be
" expressed in words at length." In this indictment the num-
bers are all expressed in figures, instead of being written out at
length, in words with Roman characters.

ORANGE,
March,
1831.

State
vs.
Hodgeden.

*Mr. Buck, state attorney, contra.*—The three causes for arrest
of judgement, in this case, may be resolved into, and considered
as embracing, two distinct propositions. 1st. That the indictment
is not given in the English language. 2d. That, if it be consider-
ed as given in the English language, yet characters, abbrevia-
tions, and numerical figures, are used in a manner inconsistent
with the policy, expediency, and strictness, which prevail in
criminal proceedings.

As to the *first* point, I say, that the indictment is given in the
English language, and in characters adopted into, and constituting
a part of, and universally received as belonging to, the written lan-
guage. The letters, " *A. D.*," the character " *&*," and the nu-
merical figures " 1830," have their appropriate signification, are
taught in our schools, and with which every school boy is familiar.
The statute requiring proceedings in court, to be in the English
language, is equally applicable to civil as to criminal process.
Now this mode of writing universally prevails in civil process, as
the records and files of this court will show. Yet it has never oc-
curred to any one, that they were void for not being in English.

As to the *second* point, there may appear, at first view, some
plausibility in the position assumed by the motion in arrest : but a
little attention will show us that the ground assumed is untenable.
The strictness, so much talked of in criminal proceedings, &c.,
has reference only to the nature and legal effect, of the facts set
forth, as constituting the crime charged ; to the certainty and per-
spicuity, with which these facts are set forth ; so that it shall ap-
pear clearly, and certainly, to the legal apprehension of the court,
what the nature and circumstances of the crime are. It has not
reference to, and does not involve, the mode of writing, or the
chirography of the indictment. The practice of the English
courts admitted of abbreviations, and the use of figures to express
numbers. For, while indictments were drawn in Latin, false
Latin did not vitiate the indictment ; (2 *Hawk. P. C.* 338, *s.* 86 ;)
[*Lond. ed.* 4 *vol. p.* 49 ;] and abbreviations, if sanctioned by le-
gal usage, were permitted, such as " *dno.*" for *domino* ; "*R. Rs.*"
for *regni regis.*—(2 *Hawk. P. C.* 340, *s.* 87 ;) [*Lond. ed.* 4
*vol. p.* 50.] That figures were admitted, appears from 3*d Buc.*

ORANGE,
March,
1831.

State
vs.
Hodgeden.

*Abr.* 116, and *2 Hawk. P. C.* 340, *s.* 87, provided they be Roman figures, as XIX for nineteen, XL for forty, &c., though the editor of *Bacon's Abridgement* doubts whether this restriction existed. Chitty says, on the authority of a case in Leach, in the time of Lord Mansfield, that "*recev'd*" is good, and shall be understood for "*received*."—(*1 Chit. Cr. L.* 141.) These instances show, that, when indictments were drawn in Latin, and more recently while in English, no principle of strictness or expediency prohibited the use of abbreviations or figures to express numbers in the indictment. I am aware, that Chitty, Burns, and other authorities, say, that "indictments must be in words at length;" and, therefore, "no abbreviations can be admitted; nor can any figures be allowed in indictments; but all numbers must be expressed in words at length." This assertion seems to rest upon the statues, 4 *Geo. II. c.* 26, and 6 *Geo. II. c.* 14. But I think the effect and provisions of these acts have been entirely overlooked.—2 *Hawk. P. C.* 341. The strict and particular provisions of the 4 *Geo. II. c.* 26, are repealed, by the 6 *Geo. II. c.* 14, being, in England, the rule as to writing indictments and other process, which, in this state, ought to be regulated only by common usage. This indictment, I trust, I have shown to be written according to the common usage and rules of the written English language, and therefore ought to be sustained.

HUTCHINSON, C. J., *pronounced the opinion of the Court.*— On inspection of this indictment, we perceive, that the characters and figures used, are such as are in common use among us, and have been so from time immemorial. They are such as all persons, who write, and read writing, read and understand alike. These are so plainly written, according to the accustomed form of these characters and figures, that no two persons at all familiar with our daily manuscripts, could read and understand them differently. This exception attracted but a slight attention from the bench of the county court; because we readily determined not to let off a prisoner, who had been found guilty of a crime by the jury, upon an objection so merely technical, before the principle, on which that objection was founded, had received the sanction of this Court. We are not aware, that this question has before been raised before this Court. If the objection prevails, it must be on account of some positive law, that we deem binding upon us. This strictness is not required by the safety of the prisoner. His rights can be fully guarded by the caution that no indictment shall

be considered good, unless so plainly written, whether in characters and figures, or in words at length, that there is no doubt of its furnishing a bar to another prosecution for the same offence. That, which the respondent relies upon as positive law in England, was never extended to civil process there ; and was founded upon a statute, never in force here, and made there to introduce the English language, as a uniform dialect in their judicial proceedings, to the exclusion of the Latin language, once used,and the intermixture of various dialects, with which the English language was corrupted. If this statute restrained the expressing of numbers by figures, that restraint was removed by the subsequent statute, cited by the state's attorney. But, if the restraint yet remained in England, it being imposed by statute, and not a regulation of the common law, it is not binding upon this Court. While our statute requires our judicial proceedings to be in the English language, it requires this alike in civil cases and criminal. And these initials and figures have ever been used in civil proceedings in this state. They seem to be incorporated into our English language, and become a part of it, as well understood as any other part of it. If the respondent could object, that this indictment is so badly written that it cannot be read, or that different persons would understand it to mean different crimes, by reason of which a conviction on this would be no sure bar to another prosecution for the same offence, his objection would seem more formidable. He is free from all danger of this kind, in the case before us.

The respondent takes nothing by his motion.

*Smith, & Peck, & Collamer*, for respondent.
*Buck*, state's attorney, for the state.