State *v.* Tuller.

———◆ ◆———

# SUPREME COURT OF ERRORS.

## COUNTIES OF HARTFORD AND TOLLAND.

SEPTEMBER TERM, 1867.

Present,

HINMAN, C. J., BUTLER, MCCURDY, PARK AND CARPENTER, JS.

STATE *vs.* CHARLES D. TULLER.

Under our practice, an information which alleges the offense to have been committed *"on or about"* a certain day, and uses figures instead of words in expressing dates, is ·sufficient.

A juror who has formed and expressed an opinion before the trial is disqualified ; and that fact, if unknown to the prisoner or his counsel until after the verdict is rendered, is good cause for arresting the ·judgment.

But if the prisoner or his counsel are apprised of the fact at any time before the

State *v.* Tuller.

the verdict is rendered, and have reasonable opportunity to apply to the court to have the jury discharged, and neglect to do it, the objection is to be considered as waived.

Knowledge of a fact by the counsel who manage the prisoner's defense, is notice to him ; and if it were not so, a motion in arrest, which did not aver the ignorance of the counsel, as well as of the prisoner, would be insufficient and be over-ruled.

A waiver by the counsel who manage a prisoner's defense, is in effect a waiver by him ; and the prisoner, or his counsel, may waive any objection to the proceedings in a case not capital.

The statute of this state, (Gen. Statutes, tit. 12, sec. 191,) relating to embezzlement by the officers of a bank, applies to officers of a national bank who take and purloin a *special deposit*, made by one of its customers, but it is inoperative in respect to the embezzlement of the property of the bank by its agents, for which the act of Congress provides a penalty.

A special deposit of bonds, made by a customer, done up in a package, is within the purview and protection of that statute.

Congress has no power under the constitution to confer upon the state courts jurisdiction of crimes created by federal statutes, nor can the state legislatures confer such jurisdiction.

Where an act of Congress creating a corporation provides a punishment to be inflicted upon any officer of the corporation who embezzles its property, it is not competent for the state legislature to make the same act an offense against the laws of the state.

But where an act of Congress creates a corporation within a state, and authorizes it in general terms to pursue the business of banking, it is competent for a state legislature to protect the bank, and those who deal with it, in that business, by suitable penal enactments. Such an enactment is not predicated on and has no relation to any law of Congress or offense created thereby.

Therefore, where the act of Congress authorizing the establishment of national banks, provided a punishment to be inflicted upon the officers of the bank who should embezzle its property, but made no provision for such punishment in case of embezzlement or theft of the property of its customers, and a teller of the bank purloined a package of bonds, specially deposited in the vault of the bank by one of its customers, it was held that the act was within the purview of the statute of the state punishing officers of banks for embezzling the property of third persons deposited therein, and within the jurisdiction of our courts.

Where an information charged the teller of the bank with having stolen a package of bonds from the vault of the bank, *to which he had access*, belonging to a third person, but did not allege any reception of or entrusting to, or possession of the same by him,—it was held that the taking of the package was a felony, and that the rule in relation to breaking a package and abstracting the contents, necessary to constitute felony in receivers and bailees, did not apply.

It is in the discretion of a judge, in order to insure a fair trial, where there are several counts in the information, to direct the attorney for the state to elect upon which count he will claim a conviction, and to nolle the others ; or to direct the jury when they return their verdict to say upon which count or counts they find the prisoner guilty. But it is matter of discretion, and if the court do not conform to the request, the omission cannot be revised, as matter of right, on

motion in arrest or for a new trial; nor will the court interfere to grant a new trial, unless they see that injustice has been done.

It is essential to the administration of justice that several distinct offenses should be joined in cases of misdemeanor; and in some cases of felony that the same offense should be laid differently in different counts; and the rule precludes the right of the prisoner to insist upon an election of counts, or that the jury should be required to find specially on each count.

Where there are several counts in the information and a general verdict is rendered, the jury will be presumed to have found the prisoner guilty upon all the counts; and the court will impose a sentence, in accordance with the facts proved upon the trial.

INFORMATION for theft and embezzlement, in the superior court in Hartford county; tried to the jury on the plea of not guilty, before *Pardee, J.*

The first count of the information, which was for theft, was as follows:—

That heretofore, to wit, on or about the 4th day of September, 1866, at the town of Hartford in said county, Charles D. Tuller of said Hartford, with force and arms, ten bonds of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of one thousand dollars, and bearing interest at the rate of six per cent., commonly called five-twenty bonds, and numbered respectively 4189, 4190, 4191, 4192, 4193, 4194, 4195, 4196, 4197 and 4198,—three notes of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of one thousand dollars, bearing interest at the rate of seven and three-tenths per cent., commonly called seven-thirty notes, and numbered respectively 59,972, 59,973 and 59,977,—eight notes of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of five hundred dollars, and bearing interest at the rate of seven and three-tenths per cent., commonly called seven-thirty notes, and numbered respectively 100,139, 69,680, 69,681, 69,682, 69,683, 69,653, 69,654 and 69,655,—three notes of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of five hundred dollars, and bearing interest at the rate of seven and

three-tenths per cent., commonly called seven-thirty notes, and numbered respectively 180,654, 180,655 and 85,657,—two notes of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of one thousand dollars, and bearing interest at the rate of seven and three-tenths per cent., commonly called seven-thirty notes, and numbered respectively 83,901 and 83,896,—two notes of the United States, issued by authority of and under the laws of the United States, each of the denomination and value of one hundred dollars, bearing interest at the rate of seven and three-tenths per cent., commonly called seven-thirty notes, and numbered respectively 594,843 and 163,641 ;—all of the value of twenty thousand and seven hundred dollars, of the goods and estate of Loyal Wilcox, feloniously did steal, take and carry away, against the peace and contrary to the statute in such case made and provided.

The second count of the information, which was for embezzlement, was as follows :—

That the said Charles D. Tuller at said town of Hartford on the 4th day of September, 1866, was, and for more than one year prior thereto had been, a teller in the Hartford National Bank, a corporation then and there duly and legally established, organized and existing under and by virtue of the laws of the United States as an incorporated bank, and having a banking-house and a place of business at and in said town of Hartford, and did during all the time last aforesaid, by virtue of his said office as teller in said bank, have access to the bills, notes and other choses in action belonging to and being the property of other persons, and by them deposited with said bank, in the said banking-house of said bank, for safe keeping ; and did, on or about the 4th day of September, 1866, and while teller of said bank as aforesaid, and while in the employment thereof, fraudulently and feloniously take and purloin from the banking-house of said bank, and secrete, embezzle and appropriate to his own use, ten other bonds of the United States, &c., [here describing the same bonds described in the first count,] all of the value of twenty thou-

State *v.* Tuller.

sand and seven hundred dollars, the property and estate of Loyal Wilcox of said Hartford, the same having been by him, the said Wilcox, deposited with said bank in the banking-house of said bank for safe keeping, and then and there being deposited in said banking-house, with intent to defraud and prejudice the said Loyal Wilcox and the said bank, against the peace and contrary to the form of the statute in such case made and provided.*

On the trial the attorney for the state offered evidence that, for more than twenty years prior to the 13th day of June, 1865, the Hartford Bank had existed at Hartford as a corporation chartered by the legislature of the state of Connecticut, with banking powers; that on the 13th day of June, 1865, it was re-organized as the Hartford National Bank, under the laws of the United States, and that it had since continued to exercise banking powers under those laws; that the defendant acted as teller of the Hartford Bank, and of the Hartford National Bank, from the 1st day of January 1864 to the 1st day of October 1866, and that as such teller he had the same access as had the other officers of the bank, to all property belonging to, or deposited in the bank. Also that on the 9th day of April, 1866, one Loyal Wilcox, with the consent of the bank, deposited a sealed envelope containing the property described in the information, in the vault of the bank, for safe keeping merely, and without compensation to

---

* The statute upon which this count is founded, and the construction of which became an important question in the case, is as follows, (Gen. Statutes, tit. 12, sec. 191.)

"Every president, director, cashier, secretary, treasurer, teller, clerk, book keeper, or agent of any bank, savings bank, fire insurance company, life insurance company, marine insurance company, or any insurance company, incorporated by authority in this state, who, while in the employment of any bank, national banking association, savings bank, or insurance company, shall take, purloin, secrete, or in any way appropriate to his own use, or to the use of others, or permit any other person to take, purloin, secrete, or in any way appropriate to his use, or to the use of others, any of the moneys, coins, bills, notes, credits, or other choses in action, belonging to, or deposited in, such bank, banking association, savings bank or insurance company, with intent to defraud and prejudice any person or persons, or body politic or corporate; * * * * shall suffer imprisonment in the Connecticut state prison, for a term not less than two, nor more than ten years."

the bank for the privilege; that Wilcox first thereafter asked the bank to return the package to him on the 4th day of September, 1866; that it was not then, nor has it since been found either by Wilcox or the bank; and that, between the 9th day of April and the 4th day of September 1866, the defendant stole from some place within the banking house of the bank, the sealed envelope, together with its contents; or that the defendant embezzled and fraudulently converted its contents to his own use.

The attorney for the state also offered evidence to prove that, between the 1st and 4th days of September, 1866, the defendant, in his private capacity and on his individual account, sent ten United States 5-20 bonds of one thousand dollars each, and certain United States 7-30 bonds, to Corn, Tweedy & Co., brokers in the city of New York, for sale; that the proceeds of the sales of the bonds were remitted by Corn, Tweedy & Co., to the defendant in the form of legal tender notes of the United States; and that the bonds constituted a part of the contents of the sealed envelope when the same was deposited in the bank by Wilcox. Also that, on the 31st day of August, 1866, the defendant, in his capacity as teller, and in the name of the Hartford National Bank, forwarded to the Fourth National Bank of New York, to be sold, and the proceeds credited in their account with the Hartford National Bank, five United States 7-30 notes for one thousand dollars each, which constituted a part of the contents of the sealed envelope when deposited in the bank by Wilcox, together with gold coupons and other securities belonging to the Hartford National Bank, all amounting to about thirteen thousand dollars; and that on the 1st day of September 1866 the Fourth National Bank of New York sent to the Hartford National Bank a letter stating the proceeds of the sale of the five thousand dollars of United States 7-30 notes, which letter was addressed to the cashier of the bank, and referred to the notes as "received in your favor of the 31st ult."

The attorney for the state also offered evidence for the purpose of showing concealment on the part of the defendant, as to the disposition made by him of the five thousand dollars

of 7-30 notes, that this letter came into his hands, and was by him withheld from all the other officers of the bank, and that the same was never seen by any officer of the bank except himself. In order to rebut any presumption arising from the act of withholding the letter from the other officers of the bank, the defendant introduced one Ralph Gilbert as a witness, who testified that the defendant, in his individual capacity, had been an agent for the witness, to some extent, in the purchase and sale of government securities and bank-stocks. The defendant's counsel then put the following questions to the witness: "Was it, or was it not, Tuller's invariable custom, as a broker, to pass over his statements received from Corn, Tweedy & Co., or New York brokers, to his customers?" Also, "What was Tuller's custom with you in regard to his dealings for you with Corn, Tweedy & Co., in respect to their statements?" To each of these questions the attorney for the state objected as irrelevant, and the court excluded them.

The defendant's counsel requested the court to charge the jury as follows:—

1. That if any verdict is rendered by the jury upon the second count their verdict must be for the defendant.

2. That the second count is to be laid out of the case entirely, and that unless the jury find that the bonds were feloniously taken by the defendant from some other place than the bank, their verdict upon this information must be not guilty.

3. That if the jury find that the bonds were deposited in the bank, and were taken thence by the defendant while he was a teller of the bank, their verdict must be in his favor.

4. That if the jury find that the defendant while teller of the bank took the package entire and unbroken from the bank, even though with the intent of afterwards appropriating the contents of the package to his own use, such taking was not a crime under the statute, and their verdict must be for the defendant, unless they also find that he intended to

appropriate these securities to his own use at the very time the securities were deposited in the bank.

5. That the defendant cannot be convicted under the second count, because the statute upon which it is based does not include tellers of national banking associations.

6. That there can be no conviction under the second count because the package in question was not the property of or a deposit in the bank within the meaning of the act.

7. That if the jury find the defendant guilty under either count, they must state in their verdict under which count they find him guilty.

8. That all testimony offered and tending merely to prove an embezzlement by the defendant while teller of the Hartford National Bank is to be considered as ruled out, and is not to be taken into consideration by the jury in making up their verdict.

The court charged the jury as follows:—

"If, from all the evidence in the case, you are satisfied beyond any reasonable doubt that on or about the 9th day of April, 1866, Loyal Wilcox was the owner of the bonds and other securities named in the information, and that on or about that day he put them by permission of the Hartford National Bank within their banking house as his place for the safe keeping thereof, and that between that day and the 1st day of October, 1866, while the said Wilcox continued to be the owner of them, the said Charles D. Tuller did feloniously take, steal and carry the same away from said banking house, it will be your duty to render a verdict of guilty upon the first count of the information. If, under the second count in the information, the jury are satisfied from all the evidence in the case, beyond a reasonable doubt, that the property described in it was the property of Loyal Wilcox, and was by him deposited in the Hartford National Bank, and received by the Bank for safe keeping, and while there deposited was taken by the prisoner and converted to his own use or the use of others, with intent to defraud Wilcox or the bank, then it will be their duty to render a verdict of guilty on this count."

The jury rendered a verdict of guilty, and the defendant moved for a new trial for error in the rulings and charge of the court.

The defendant also filed the following motion in arrest of judgment:—

"The defendant in court, after verdict and before judgment, moves in arrest of judgment, because he says that the attorney's information and the matters contained therein, are insufficient in the law to warrant any judgment to be rendered thereon against the defendant, and he thereof prays judgment. And for further cause the defendant moves in arrest, because he says that Aner Sperry, one of the jurors who was impanneled in, and who tried said cause, did before the trial, at divers times, form and express an opinion in favor of the guilt of the accused, which before said verdict was rendered was to the accused unknown, and this he is ready to verify. Wherefore he prays that said verdict be set aside and no judgment rendered thereon."

Upon the second cause for arrest of judgment the court found the following facts:—Aner Sperry, named in the motion, was impanneled in, and tried the cause as one of the jurors. Before the trial he formed an opinion that the defendant was guilty of the crime with which he is charged in the information, and expressed that opinion to Samuel F. Jones of Hartford, in October, 1866, and again to Charles C. Soper of Hartford, in December, 1866. While the case was on trial, that is, immediately after the jury had retired from the court room to consider their verdict, and before the verdict was rendered, Mr. Jones informed Henry C. Robinson, Esq., one of the counsel for the defendant, that one of the jurors, (not naming him,) had expressed his opinion to him that Tuller was guilty of the crime charged against him, but Mr. Robinson did not bring this fact to the notice of the court, and neither Tuller nor his counsel had any other knowledge that Sperry had formed or expressed the opinion stated, until after the rendition of the verdict. And the court reserved the motion, with these facts, for the advice of this court, in connection with the motion for a new trial.

State *v.* Tuller.

*N. Shipman* and *Robinson,* in support of the motions.

1. An opinion formed and expressed by a juror prior to the trial, unknown to the party, is good cause for arrest of the judgment. *Smith* v. *Ward,* 2 Root, 302 ; *Dent* v. *Hertford,* 2 Salk., 645 ; *Wynn* v. *Bishop of Bangor,* Comyn, 601 ; *United States* v. *Fries,* 3 Dallas, 515 ; *Ramadge* v. *Ryan,* 9 Bing., 333 ; *Commonwealth* v. *Hussey,* 13 Mass., 221. In all the English, and in the leading American cases, the bias of a juror, formed prior to the trial, is good cause for arrest, whenever discovered after the impaneling of the jury. Cases above cited ; *Lady Herbert* v. *Shaw,* 11 Mod., 118 ; *Jeffries* v. *Randall,* 14 Mass., 205 ; *State* v. *Hopkins,* 1 Bay, 365 ; *Tenney* v. *Evans,* 13 N. Hamp., 466. "It is of much more importance that the community should feel assured of the purity of trial by jury, without bias, according to law, than it is that the prisoner be now sentenced, even if he is guilty." *State* v. *Hascall,* 6 N. Hamp., 363. The proviso, that if the cause of objection to the juror was known during the trial judgment will not be arrested, was introduced to avoid motions founded upon technical objections or slight misconduct. *Selleck* v. *Sugar Hollow Turnpike Co.,* 13 Conn., 453 ; *Pettibone* v. *Phelps,* id., 445. But courts have ever been careful to preserve the impartiality of the jury box, when serious objection or misconduct was apparent. " A greater evil could scarcely befall society, than, with institutions like our own, the loss of the public confidence in the entire impartiality of jurors ; and the fearful consequences of such a result must ever be present to the minds of all who are called upon to determine questions like the present." *Tenney* v. *Evans,* 13 N. Hamp., 466. This proviso has never been extended by our decisions to defeat a motion in arrest, when the objection to the juror was discovered after the cause was submitted to the jury. In the language of our decisions, the objection must be discovered "while the cause is on trial before the jury." or "before the trial is closed." *Woodruff* v. *Richardson,* 20 Conn., 238 ; *Pettibone* v. *Phelps,* 13 Conn., 445. The trial consists of the examination of the witnesses, the argument of counsel and the charge of the court. At

VOL. XXXIV. 37

the close of the charge the trial is closed.   The case has been
tried when the jury retire from the court room, the place of
trial.   The trial having closed, its result only remains to be
announced.   In the vast majority of cases, the objection has
been in fact discovered after the verdict, and not during the
brief interval between the retiring of the jury and the ren-
dition of the verdict; and hence the phrase, "after the ver-
dict," has crept into the reporter's statement; but the law
has never been so harsh as to compel a party, in that brief
space of time, to ascertain the facts and arrest the delibera-
tions of the jury.   The doctrine laid down by Judge Swift is
the settled law of Connecticut and of the other states: "If,
after the cause has been submitted to the jury, either party
discovers a ground of challenge to one of the jurors, or any
misconduct in any of them, he can, after the verdict is re-
turned, if against him, file what is called in this state a mo-
tion in arrest, or a motion to set aside the verdict."   2 Swift
Dig., 705 ; *Rollins* v. *Ames,* 2 N. Hamp, 350 ; *M'Kinley* v.
*Smith,* Hardin, 167 ; *Pierce* v. *Bush,* 3 Bibb, 347 ; *Fitzpat-
rick* v. *Harris,* 16 B. Monr., 561 ; *Commonwealth* v. *Hussey,*
13 Mass., 221 ; *Jeffries* v. *Randall,* 14 id., 205 ; *Davis* v.
*Allen,* 11 Pick., 468 ; *Lady Herbert* v. *Shaw,* 11 Mod., 118.
In *State* v. *Andrews,* 29 Conn., 100, although, out of abun-
dant caution, the information was communicated to the court,
no motion was made.   Counsel neither asked nor desired the
court to recall the jury.   The mere communication of the
information to the court amounted to nothing.   The rule as
claimed by the state in this case, would be a great hardship,
unnecessarily onerous, and perplexing to counsel and party.
The previously formed and expressed opinion of this juror is
found by the court below not to have been known to the ac-
cused or to either of his counsel until after the rendition of
the verdict.   The facts, as detailed in the finding, bring the
case within the rule claimed by the state.   Knowledge is a
clear perception, it is more than a surmise, it is a full appre-
hension of the facts in the case.   Nobody had any knowledge
of this prejudgment on the part of Mr. Sperry until after the
verdict.   One of the counsel was casually informed, after the

jury had retired, that one of the twelve jurors had expressed an opinion, but which one was unknown. No knowledge of the person or of the facts was obtained until after the verdict, and as soon as the name and the facts were known they were communicated to the court. Upon the vague information originally furnished, no one would have been justified in requesting the court to summon the jury from the jury room. The name of the juror must first be ascertained. The facts and the testimony must be examined. The account of the juror must be heard. It would neither have been proper nor prudent, blindly to attack the jury, before knowing of whom or of what complaint was made. Prior to the verdict we had nothing to found a motion upon, and nothing tangible to communicate to the court. The accused himself was entirely ignorant of any objection to any juror until after the verdict. The rights of the prisoner cannot be waived. *People* v. *McKay*, 18 Johns., 218. ."It is a humane principle to consider the prisoner as standing upon all his rights, and waiving nothing upon the score of irregularity." *Cancemi* v. *The People*, 18 N. Y., 128.

2. The information is insufficient. 1st. In each count, the crime is alleged to have been committed "on or about" the 4th of September, 1866. This allegation is insufficient. 1 Bishop Crim. Procedure, § 242; *United States* v. *Crittenden*, Hemp., 61. 2d. The era is not specified, and the dates are in figures. *Commonwealth* v. *Adams*, 1 Gray, 481; *Commonwealth* v. *Mc Loon*, 5 id., 91; 1 Chitty Crim. Law, 176. The case of *Rawson* v. *The State*, 19 Conn., 292, merely decides that the same particularity is not required in an information for violation of the liquor law, made by a town grandjuror to a justice of the peace.

3. Upon the evidence detailed in the motion, the judge should have charged the jury, as requested, that there could be no conviction under the second count. 1st. The package in question was not the property of, or a deposit in the bank, within the meaning of the statute. The purloining of property of an individual, placed in the vault of a bank for safe keeping merely, and not with the corporation, is not em-

braced in the statute. The term "deposited" means deposited with the corporation, not simply left in the banking house. The statute was intended to cover the property of the corporation, the deposits in the bank sense, or property in which, jointly with others, it had an interest as collaterals. 2d. The statute does not include employees of national banking associations. The law was passed prior to the establishment of national banks, and embraces only corporations created by authority of this state. The phrase "incorporated by authority in this state" means by authority of, or within the state. Although the revisers have interpolated the term "banking association" in a subsequent clause of the statute, that interpolation cannot extend the statute so as to embrace employees in any corporation not mentioned in the initial clause. If they had added the word "stores," it would not have been held that all clerks were included. The terms "bank" and "banking association" are widely different, and the word "bank" does not include national associations. In our statutes of 1863, 4 and 5, in regard to national banking associations, the distinction is uniformly observed. 3d. Embezzlement by employees of national banks, is by the United States law cognizable by the United States courts. The United States having assumed jurisdiction of this offense, it is not punishable by state courts, any more than an offense, within the state, against the laws relating to the post-office or the currency department. By the judiciary act of Congress, the United States have exclusive jurisdiction of all offenses which are punishable by United States laws, unless Congress particularly declares that the several state courts are vested with jurisdiction in specified cases. This exception has been held unconstitutional, and it is now the uniform doctrine that the state courts have no jurisdiction of suits arising on the penal laws of the United States, nor can jurisdiction be conferred upon them by an act of Congress. *Davison v. Champlin*, 7 Conn., 244; *United States v. Lathrop*, 17 Johns., 4; *Martin v. Hunter's Lessee*, 1 Wheat., 330. Neither can a state by virtue of its own statute take and exercise concurrent jurisdiction in regard to an offense which is punishable by a stat-

ute of the United States.    Exclusive jurisdiction is vested in
the federal courts of all offenses punished by the laws of the
United States, and the state courts cannot take cognizance of
those offenses, but on the contrary are deprived of the juris-
diction they may theretofore have exercised.    Wharton's Cr.
Law, 134; 3 Story's Com. on Const., 624; *Houston* v. *Moore*,
5 Wheat., 21, 27, 70; *Mattison* v. *The State*, 3 Misso., 421;
*Prigg* v. *Pennsylvania*, 16 Pet., 617, 618.    It is found that
this bank is a national banking association, legally organized
and established, under and by virtue of the laws of the United
States.    Embezzlement by tellers of national banking associa-
tions is punishable by United States law and in the United
States courts.    National Currency Act, sects. 55, 56.    A
conviction by a state court, would not be a bar to a prosecu-
tion in the federal court.

4. The court erred in not charging the jury to find, in
case of a verdict against the accused, upon which count he
was guilty.    Any misdirection by the court in a criminal
case, upon a point of law on matters material to the issue, is a
good ground for a new trial, and such misdirection, even
upon one point, is sufficient, although the jury may have
properly found their verdict upon another point as to which
there was no misdirection.    Wharton's Crim. Law, 994; *Read*
v. *Harris*, 1 Will. Wol. & D., 106; *People* v. *Bodine*, 1 Denio,
281; *State* v. *Somerville*, 21 Maine, 20.    When there are
two good counts in an indictment, and the court gives erro-
neous instructions to the jury as to one of the counts, and
there is a general verdict against the defendant, and judg-
ment thereon, it will be presumed that the verdict was given
upon both counts, and a *venire de novo* awarded.    Wharton's
Crim. Law, 996; *State* v. *McCauless*, 9 Ired. Law R., 375.


*C. Chapman* and *McFarland*, contra.


BUTLER, J.    On the motion in arrest two points are made
in relation to the sufficiency of the information, namely, first,
that the crimes are alleged to have been committed "*on or*

*about*" the fourth of September 1866, and therefore not with sufficient certainty, and second, that the era is not specified and the dates are in figures. Both of these objections were considered by Judge Church in *Rawson* v. *The State*, 19 Conn. R., 292, and holden untenable, and in that opinion the other judges concurred. The views there expressed meet our approval, and dispose of the points.

Another point made under the motion in arrest relates to the disqualification of the juror Sperry, because he had formed and expressed an opinion that the prisoner was guilty, before the trial, and before he was impaneled as a juror. The law is well settled that if a juror has formed and expressed an opinion that the prisoner is guilty of the crime charged, prior to the trial, and that fact is unknown to the prisoner or his counsel until after verdict, the fact is good cause for arresting the judgment. That doctrine was recognized by this court in *Smith* v. *Ward*, 2 Root, 302, and by Judge Swift in the second volume of his Digest, page 415. The counsel of the prisoner are right therefore in respect to the law, but the questions arise, first, whether they are right as to the fact, and second, whether their motion is sufficient.

The *counsel* for the prisoner *did know* that the panel was not indifferent because one of the jurors was biased, before the verdict, and while the jury were under the control of the court. Two claims are here made, neither of which is tenable. The first is that the counsel did not know the name of the juror. That is immaterial. He was informed by a respectable member of the bar, in open court, that the panel was not indifferent, that one of them was biased, and would have been informed of the name of the juror on the instant if he had desired it. A moment too would have sufficed to have brought the facts to the knowledge of the court; and on the request of the counsel for the prisoner, the court, on the statement of a respectable member of the bar, that one of the jurors had made such a statement to him personally, would have sent for the jury and taken the case from them without hesitation. The second claim is that if the counsel did know, but did not learn until after the jury had gone out

to consider the verdict, he did not know *during the trial*, and was not bound to bring the matter to the attention of the court. This claim is entirely too technical. It is immaterial what expressions have been used by judges or text writers in relation to the closing of a trial, or in the statement of the doctrine under consideration. We must look at the substance of the thing; and that is, that if he knows of an objection to the panel before the verdict is rendered, and in time to prevent the verdict, and obtain a rehearing before another jury, and does not avail himself of the opportunity, he must be holden to a waiver of the objection. Otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and that cannot be tolerated.

The case has been argued upon the assumption that the knowledge of the counsel was not the knowledge of the prisoner, but if that were true it would not aid the prisoner in this case; for the counsel who received the information were managers of the case, and had authority to waive objections; and the motion would be defective, and the prisoner could take nothing by it, because it is not alleged that the counsel were ignorant of the objection to the jury.

It is further claimed that if counsel did know, the prisoner is not chargeable with their waiver, because the counsel had no power to waive the objection. This claim is not tenable. The prisoner, or his counsel for him, may waive any objection in a case not capital. The cases of McKay and Cancemi were capital ones and therefore, if law, are not in point. For these reasons the motion in arrest should be overruled.

Several important practical questions are raised upon the motion for a new trial and upon the eight requests to charge made by the defendant to the court. The import of the first, second, fifth, sixth, and eighth requests is, that the prisoner could not be convicted under the second count of the information. The claims involved in those requests are, first, that the information would not lie under the statute of this state, because that statute does not embrace tellers of national banking associations; second, because the package was not the property of, or a deposit in the bank, within the meaning

State v. Tuller.

of that act; and third, that the court had no jurisdiction of such an offense, because the legislature had no constitutional right to apply it to a national bank. These claims we will consider in their order.

The first claim is not well founded. The statute is made to apply to *all banks* incorporated by authority *in* the state. The language of the statute was originally *of* the state, and was changed by the revisers and General Assembly in 1866. These alterations and the general language of the first clause of the act, taken in connection with the particular language subsequently used, sufficiently show the intention of the legislature to embrace tellers in the national banks. Although termed banking associations in the act by which they are incorporated, they are created to do a banking business and are universally known as "banks," and that is the name generally assumed by them in cases where they had previously existed under a state law and re-organized under the national law. Such is the name assumed by the institution in question, and such was the name applied to it by the counsel for the prisoner in their requests to the court. It is very clear then that the revisers and the legislature intended the statute to apply to tellers of the national banks doing business in the state.

The second claim is also without foundation. The property is not laid in the second count as the property of the bank; but as a special deposit by a third person, differing from money deposited on general account, intended by both parties to be mingled with the assets of the bank and to become its property. These special deposits are very common, and that fact, and the language used, taken in connection with the provision in respect to the persons who may be defrauded, makes it very clear that the legislature intended to provide for just such a case.

It seems equally clear that the third claim is untenable. It is undoubtedly true that the laws of Congress, if operative at all, are supreme and exclusive, and that offenses against them are not cognizable by the state courts. And it seems to be settled in this state by the case of *Davison* v. *Champlin,* 7 Conn. R., 244, and by high authority elsewhere, that

Congress have no power to give the courts of the states criminal jurisdiction in respect to offenses against federal laws. It follows therefore that the legislature have no power to constitute such offenses cognizable by our courts. So far as they have attempted to do any such thing by the statute in question, the statute is inoperative. But a statute may be good and operative in part and in part inoperative.

Congress by the national currency act incorporated the bank in question as a bank, located within this state. They enacted all the provisions which were necessary to constitute it a corporation and give it being, and all of power or restraint that they deemed essential to regulate that being. They authorized it in general terms to do a *banking business*, but they did not undertake, by any regulation or restraint, to regulate that business; and they left that to be regulated by the laws of the state and land. They did enact in the 55th section of the currency act, that if any teller or other officer of the bank should embezzle the *property of the bank* they should be punishable by fine and imprisonment. That provision goes to the being and internal working of the bank, and is intended to protect its property from its agents. It was not intended to regulate, and has not the effect of regulating, the business of the bank with its customers. Now the business of the bank is conducted within the jurisdiction of this state, with our citizens, and in conformity to our laws, and it is competent for the legislature to pass any law affecting that business, or protect the bank or its customers in the conduct of that business by any penalty, and such law and penalty will not be predicated on any law or offense created by Congress, or have any relation or be repugnant to the currency act, or in any manner infringe the jurisdiction of Congress or the federal courts. It is theft by our law to steal from a national bank ; it is burglary to break into one for the purpose of stealing ; and it is cheating to obtain money from one by false pretenses. As a corporate being, located in the state, its property and interests and business are protected by state laws and subject to state legislation, and so it is competent for the legislature to protect its customers, the citizens of the

state, in their *business dealings* with it, whatever they may be, whether constituting the relation of borrower and lender, or of special or general depositor and bailee ; and they may be controlled and protected by penal enactments, without inter-ference with the laws of Congress.

Such is the character of the statute in question. It is in part repugnant to the law of Congress, but it also protects a special depositor of the bank against the felonious or fraudulent appropriation of the deposit by the agents of the bank, who have access to it, and so far forth it is not open to the objec-tion urged.

The import of the third and fourth requests, if I correctly understand them, is that there could be no conviction under the first count for larceny, if the prisoner took the package entire and unbroken from the bank ; but it is not a case for the application of the principle claimed. It is not alleged, nor was it attempted to be proved, that the prisoner *received* the package, or that he was *entrusted* with it, or that he ever had any *care* or *possession* of it. All that is alleged or could be proved is, that he had *access* to the place of deposit. There being no trust, or possibility of the breach of trust, no posses-sion nor custody, the technical rule in relation to the break-ing of a package is entirely inapplicable. Moreover it appears without denial upon the motion that he did dispose of the contents in parcels, and must therefore have broken the pack-age at some time.

The remaining request has relation to the supposed right of the prisoner to insist that the court shall direct the jury to find separately upon each count. The prisoner has no such right. He may ask the jury so to do, and may ask the court to request them to do so, but in relation to such request the court exercises a discretion, as it does in relation to putting the prosecutor to an election of counts, and the exercise of that discretion cannot be revised as matter of right on motion in error or for a new trial. Judge Buller, in the case of *Young* v. *The King*, 3 T. R., 106, in commenting upon the manner of trial where several offenses are charged in the same indictment, says:—"All these are mere matters of discretion, which judges

exercise in order to give prisoners a fair trial, for when a verdict is given they are not the subject of any objection to the record." And Judge Swift when speaking of it confines it to cases where counts are defective, and uses the term "may," implying that it is discretionary. No authority to the contrary has been cited and we know of none. It is true there may seem to be a difficulty in determining what the sentence shall be, where there are two counts in the information embracing the same transaction, but laying it in a second count as constituting a different offense, of which the punishment is different. But in relation to that difficulty the court, in *Crowley* v. *The Commonwealth*, 11 Met., 575, in a case where two felonies requiring different degrees of punishment were laid in different counts, and a general verdict rendered, say that it must be left to the judge who tries the case, to apply the sentence according to the law and the facts proved. The presumption after a general verdict in such a case is, and must be, that the jury found the prisoner guilty of both offenses. The court can see upon the facts upon which of the two counts judgment should be entered, and the difficulty is apparent rather than real. At any rate the right to lay the same transaction in different counts and as constituting different offenses is essential to the administration of justice, and the remedy against the hardship of that rule must be left to the discretion of the judge, exercised during the trial or at the time of sentence. In England if two different *felonies* are charged in separate counts, the court will quash the indictment, but that is not the practice here. The court, if two distinct transactions are joined, may direct the attorney to elect, and to nolle one of the counts. But if the *same transaction* is laid as a different offense in different counts, the court will not ordinarily interfere. In this case no right of the prisoner has been infringed, and we cannot say that any injustice hâs been done.

For these reasons we see no ground for ordering a new trial. It has been suggested on the argument that the prisoner upon another trial would be able to explain his possession of the property and the mystery which he claims attends it. But

we cannot listen to such suggestions. If he has new evidence he can bring his petition for a new trial. If he can explain his possession of the property consistently with his innocence, he can apply to the pardoning power. As the case stands every principle of justice and duty requires of us an inflexible adherence to the rules of the law, and a preservation of its majesty.

The superior court is advised to pass sentence upon the verdict in accordance with the views expressed.

In this opinion all the other judges concurred, except Mc-Curdy, J., who dissented.