COMMONWEALTH *vs.* EDWARD SMITH.

Worcester. September 29, 1890. — January 12, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Complaint — Averment of Time — Arabic Numerals — Variance — Obstructing Police Officer — Exceptions.*

The day of the month in an allegation of time in a complaint may be expressed in Arabic numerals.

A complaint alleging that the defendant "upon the body of Jos. T. B. . . . did make an assault, and him, the said Joseph T. B., did then and there beat, bruise, and wound, . . . and other wrongs to the said Joseph T. B. then and there did," sufficiently shows that Jos. is the abbreviation of Joseph, and that the person assaulted was Joseph T. B., and proof of the latter does not consitute a variance.

At the trial of a complaint for obstructing a police officer, there was evidence that the officer had been detailed to keep the streets clear, under a city ordinance the validity of which was not questioned, while a circus procession was passing along; and that the defendant sought to prevent the removal of his horse and wagon from the street. The defendant, who contended that, as a traveller, he had a right to remain there, excepted to refusals to order a verdict of not guilty, to give instructions predicated upon the hypothesis that he was at the time a traveller, and also to give other instructions which were given in substance. *Held*, that the defendant had no ground of exception.

COMPLAINT to the Police Court of Fitchburg, alleging that the defendant, " on the 26th day of July, in the year eighteen hundred and ninety, at Fitchburg, in said county, in and upon the body of Jos. T. Battles, he being then and there one of the constables, watchmen, and police officers of said Fitchburg, legally authorized and duly qualified to discharge and perform the duties of said office, and also being then and there in the due and lawful execution of the same, and also being then and there in the peace of said Commonwealth, did make an assault, and him,

the said Joseph T. Battles, did then and there beat, bruise, and
wound, and in due and lawful execution of his said office did
then and there unlawfully, knowingly, and designedly obstruct,
hinder, and oppose, and other wrongs to the said Joseph T.
Battles then and there did."

In the Superior Court, on appeal, before the jury were impan-
elled, the defendant renewed a motion, made by him in the police
court, to quash the complaint, on the ground that it did not suffi-
ciently set forth the time when the alleged offence was committed,
in that the day of the month was expressed in Arabic figures.
*Dunbar*, J., overruled the motion.

At the trial there was evidence tending to show that, on July
26, 1890, Joseph T. Battles, who was a police officer of Fitchburg,
had been specially detailed, in anticipation of a parade in the
streets by a circus, to keep the streets clear of obstructions, and
was engaged in this service at the time of the alleged assault;
that he had been instructed by Captain Wheeler, of the police
force of the city, to look out for teams and keep the street clear
for the procession, and went ahead of the procession for the pur-
pose of carrying out these instructions; that Captain Wheeler
had received instructions from the chief of police to the same
effect; that, as Battles came down a street several rods in ad-
vance of the procession, he saw the defendant with his horse and
wagon standing about one hundred feet in front of him upon the
left hand side of the street; that they stood up close to the side-
walk, and the defendant was by his horse's head; that Battles
warned the defendant by motions to remove his team, but the
defendant, who knew that Battles was an officer, did not move;
and that thereupon the officer attempted to remove the team and
was resisted by the defendant, who struck him and succeeded in
preventing him from removing the team before the procession
came up. There was no evidence that the municipal authorities
had given the circus a right to parade in the streets, or taken any
action with reference to clearing the streets or the passing of
vehicles during the parade, except an existing ordinance of the
city, which provided that the chief of police " shall take notice
of all nuisances, impediments, and obstructions in the streets of
the city, and shall remove the same, or take all proper action in
relation thereto."

The defendant asked the judge to rule that there was a variance, and that under this complaint, alleging an assault upon Jos. T. Battles, the defendant could not be convicted of an assault upon Joseph T. Battles. The judge declined so to rule, and the defendant excepted. The defendant also asked the judge to give the following rulings, viz. :

" 1. If the defendant was a traveller upon the highway, and stopped in front of a store for the purpose of trading, and, seeing the circus procession approaching, stood by his horse's head for the purpose of holding his horse and to prevent him from being frightened, he did not thereby cease to be a traveller on the street. 2. If the defendant, being a traveller upon the street, was properly and peaceably holding his horse at the side of the street while the procession was passing, he was not obliged to remove his horse from the street at the command of the police officer. 3. If the defendant, being a traveller upon the street, was properly and peaceably holding his horse at the side of the street during the passing of the procession, the police officer had no right, against the objection of the defendant, to remove the defendant's team from the street, and if the defendant did nothing more than to hold on to his horse to prevent the removal of his team, then the jury would not be justified in finding him guilty, under this complaint. 4. The police officer was not in the lawful execution of his office if he attempted to remove the defendant's horse and carriage from the street against the objection of the defendant, and the defendant had the right to hold on to his horse to prevent such removal. 5. If the defendant was properly and peaceably holding his horse at the side of the street, the police officer had no right, against the defendant's objection, to remove his team from the street in order to make way for a circus procession which was parading the street, without any special license or·authority. 6. The fact that the defendant was on the left side of the street has no effect upon this complaint, and gave the officer no right to interfere with the defendant nor with his team. 7. That the jury be instructed to return a verdict of not guilty."

The judge declined to give any of these rulings as requested, but after instructions, to which no exception was taken, as to what would constitute an assault and battery, further instructed

the jury as follows : " As I have previously said to you, it is necessary to show that the officer was in the due and lawful exercise of his duty. Of this there is a question. It is necessary also to show that Smith knew what was required of him, and by whom, and, as I have before told you, that Battles was an officer. Whether the officer was in the due and lawful exercise of his duty depends upon the right of the defendant to make such use of the street as he was making. Upon that question I instruct you that the streets and highways are laid out for travellers. They are not for spectators, if by being spectators they obstruct the highway. The right of the public in a highway is coextensive with the limits of such highway. A traveller upon the highway does not necessarily cease to be a traveller because he stops his team and alights from it temporarily, nor does he necessarily become an obstruction in so doing. Whether in any case he has ceased to be a traveller, or has become an obstruction, is ordinarily a question of fact depending upon the circumstances of the particular case. A traveller may stop upon a highway a reasonable time for a reasonable purpose. And what is a reasonable purpose and a reasonable time also depend upon the circumstances. It might seem to you, for instance, that a man driving upon a county road upon which there was little travel, and when there was no reason to apprehend that he would interfere with others who were lawfully using the way, would not be making an unreasonable use of the highway if he stopped his horse and alighted from his carriage to pick berries growing by the side of the way ; while you might take a very different view of the reasonableness of the action of a man who should stop his team in the midst of a crowded street of a city thronged with other travellers, whose lawful use of the street he thereby impeded, merely to gaze from curiosity at some object he saw in a window or upon the street. The Commonwealth claims that Smith was making an unreasonable use of the highway, and had ceased to be a traveller. Was he at the time in question a traveller? If his stop was a reasonable one, he was, and the officer had no right to interfere. If it was not, the officer had the right to remove his team, after Smith's unreasonable refusal to do so, by the use of such force as was necessary and reasonable to accomplish such removal. If the officer exceeded that force he was a trespasser,

and Smith had the right to defend his team by reasonable and necessary force as against an unjust aggressor."

The defendant excepted to the refusal of the judge to give the rulings requested; but saved no exception to the rulings as given.

The jury returned a verdict of guilty; and the defendant alleged exceptions, which were allowed.

*A. Norcross & H. C. Hartwell,* (*C. F. Baker* with them,) for the defendant.

*A. J. Waterman,* Attorney General, *& H. C. Bliss,* First Assistant Attorney General, for the Commonwealth.

FIELD, C. J.　The defendant moved to quash this complaint because "it did not sufficiently set forth the time when the alleged offence was committed, the day of the month being expressed in Arabic figures." The time when the offence was committed is described in the complaint as "on the 26th day of July, in the year eighteen hundred and ninety."

The English statutes of 4 Geo. II. c. 26, and of 6 Geo. II. c. 14, did not extend to the Colonies, and all writs, processes, declarations, indictments, etc., in the Province of Massachusetts Bay, long before the passage of these statutes were required by a provincial statute to be "in the English tongue and no other," if indeed by reason of the usage prevailing in the Colony and Province any statute was necessary. Prov. St. 1701–2, c. 5, § 1, 1 Prov. Laws, (State ed.) 464. The provincial acts of 1692–93, c. 33, § 13, 1697, c. 9, § 11, and 1699–1700, c. 4, § 6, 1 Prov. Laws, (State ed.) 75, 287, 374, contained a similar provision, but these acts had been disallowed by the Privy Council. The English decisions, therefore, upon the use of Arabic figures when indictments were in the Latin language, or such decisions under the peculiar language of the English statutes, are not directly applicable to indictments and complaints in this Commonwealth.

In *Commonwealth* v. *McLoon,* 5 Gray, 91, it was decided that a complaint which charged the defendant with unlawfully selling intoxicating liquors "on the fifteenth day of July, 1855," was insufficient, and it was said that " to make the allegation of time in the indictment [complaint] against the defendant sufficient, there should, at all events, have been words, or at least letters, which have acquired an established use in the English language,

so added to or connected with the figures contained in it, as to describe or indicate with certainty the era to which it was intended that they should refer. *Commonwealth* v. *Clark*, 4 Cush. 596." The court declined to express any opinion whether it was sufficient " to describe the time by the use of numeral letters or figures," or whether it " must be expressed in words written out at full length." In *Commonwealth* v. *Doran*, 14 Gray, 37, the time was described in the complaint as " on the fourteenth day of December in the year one thousand eight hundred and fifty eight," and this was held sufficient, the court construing the word " year " to mean " the year of our Lord." See *Commonwealth* v. *Walton*, 11, Allen, 238.

In a general sense, the Arabic signs for expressing number are now a part of the English language, and we think that by the weight of authority in this country it must be held that the allegation of time in this complaint is sufficient, although it is undoubtedly the better practice in criminal pleading to write out in words at length the day of the month, and the year, when time is alleged. *Commonwealth* v. *Hagarman*, 10 Allen, 401. *State* v. *Reed*, 35 Maine, 489. *State* v. *Seamons*, 1 Greene, (Iowa,) 418. *State* v. *Raiford*, 7 Porter, 101. *State* v. *Smith*, Peck, 165. *State* v. *Hodgeden*, 3 Vt. 481. *State* v. *Tuller*, 34 Conn. 280. 1 Bish. Crim. Proc. (3d ed.) §§ 344–346, 389.

The complaint charges the defendant with making an assault " in and upon the body of Jos. T. Battles." The evidence was that the name of the person assaulted was " Joseph T. Battles." The defendant asked the court to rule " that there was a variance, and that under this complaint alleging an assault upon Jos. T. Battles the defendant could not be convicted of an assault upon Joseph T. Battles." The name of the person assaulted occurs three times in the complaint. The complaint charges that the defendant " in and upon the body of Jos. T. Battles . . . . . did make an assault, and him, the said Joseph T. Battles, did then and there beat, bruise, and wound, . . . . and other wrongs to the said Joseph T. Battles then and there did." We think that it appears by the complaint itself that the name of the person assaulted was Joseph T. Battles, and that " Jos." is an abbreviation for " Joseph," and that the court rightly refused to rule that there was a variance.

It appears from the exceptions that Battles, who was a police officer, "had been especially detailed to attend to keeping the streets clear of obstructions, and was engaged upon this service at the time of the alleged assault," under instructions given by Captain Wheeler, and received from the chief of police, and that by an ordinance of the city of Fitchburg, it was provided that the chief of police "shall take notice of all nuisances, impediments, and obstructions in the streets of the city, and shall remove the same, or take all proper action in relation thereto." It has not been contended that the city council had not authority to pass such an ordinance.

Of the first three requests for instructions, it may be said that they are all predicated upon the hypothesis that the defendant was, at the time of the alleged assault, a traveller, and had the rights of a traveller with a horse and wagon upon the street. The court in effect ruled that, if he was a traveller at that time, the officer had no right to interfere with him. The fourth and fifth requests for instructions ought not to have been given, if the defendant with his horse and wagon was not at the time a traveller, and they were an obstruction in the street.

The fact that the defendant's horse and wagon were upon the left side of the street was, in the charge of the court, apparently considered as immaterial, except so far as it might tend to show whether the defendant was using the street as a traveller with a horse and wagon, or as a place to leave his horse and wagon in while he amused himself by watching the procession. The court left it to the jury to say whether the defendant was a traveller, and was making a reasonable use of the highway under all the circumstances shown, and instructed them that, "if his [the defendant's] stop was a reasonable one, he was" a traveller, "and the officer had no right to interfere," and that, if he was not a traveller, the officer had a right to remove the horse and wagon, using no more force than was necessary, if the defendant on request refused to remove them. No exception was taken to these rulings, the only exceptions being to the refusal to give the rulings requested, and these, we think, were either given in substance, or ought not to have been given in the form in which they were presented.

*Exceptions overruled.*